BARTLETT BANK & TRUST COMPANY, f/k/a Bartlett State Bank, Plaintiff and Counterdefendant-Appellee, v. TRACY C. McJUNKINS *et al.*, Defendant and Counterplaintiffs-Appellants.

First District (1st Division)   No. 85—1698

Opinion filed August 18, 1986.

Thomas P. Cernek and Jeffrey T. Cernek, both of Chicago, for appellants.

Mark Schuster, of Strom, Schuster & McCarty, of Elgin, for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This appeal arises out of a counterclaim for damages based on breach of contract filed by defendants, Tracy C. and Dorothy J. McJunkins, in a foreclosure action instituted by plaintiff, Bartlett Bank after it had accelerated the maturity of a promissory note executed by the McJunkins and secured by a mortgage on the McJunkins' home. The bank voluntarily dismissed its foreclosure suit and the jury subsequently found in favor of the McJunkins on the counterclaim and awarded damages in the amount of $60,000. The post-trial judge granted the bank's motion in arrest of judgment and conditionally granted the bank's motions for a judgment notwithstanding the verdict and for a new trial. The McJunkins appealed. During the pendency of this appeal, Tracy McJunkins died and Dorothy was substituted as his personal representative. We reverse in part, affirm in part and remand.

In 1979, the McJunkins began a series of loan transactions with Bartlett Bank which were evidenced by promissory notes secured by a junior mortgage on their home located at 550 Ashland Avenue in Hoffman Estates, Illinois. The McJunkins bought their house in 1960 for $24,000 and had financed the purchase in part through a mortgage from Bell Federal Savings and Loan. Tracy McJunkins was a painter/decorator, and his wife worked as a secretary. Periodically from 1979 to 1982 the McJunkins renegotiated their loan obligations with Bartlett Bank. As the old notes matured, they were either paid

off or renewed. On February 10, 1982, the McJunkins executed a six-month promissory note in the amount of $33,252, which was secured by the junior mortgage on their home. The promissory note was payable in monthly installments of $650 with final payment due on August 19, 1982. A provision in the promissory note stated that upon default the bank at its option could accelerate the maturity of the note and declare the remaining balance due and owing. One event of default listed in the note was when the "Bank shall reasonably consider itself to be insecure."

Apparently, the McJunkins used the proceeds of the loan to acquire an interest in a company called Countryside Painting and Decorating, Inc. In 1980, Countryside began a loan relationship with Bartlett Bank that was evidenced by a series of promissory notes. On May 14, 1980, Tracy McJunkins, as secretary of Countryside, executed a written guaranty to the bank as security for Countryside's right to receive credit to the extent of $44,625.63. Sometime in late 1981 or early 1982, Countryside ceased doing business and defaulted on its loans with the bank. Tracy McJunkins' liability under the guaranty was subsequently litigated in a separate proceeding and, in a Rule 23 order, this court recently affirmed a judgment in the amount of $9,971.17 against Tracy McJunkins. *Northwest Federal Savings & Loan Association v. Lewis* (1986), 144 Ill. App. 3d 1173.

In a letter dated April 30, 1982, the bank informed the McJunkins that it deemed itself insecure as to the promissory note executed by the McJunkins in 1982 and demanded payment in full within three days. The remaining balance on the note was $32,965.20. The McJunkins were not otherwise in default or behind in the monthly payments at the time the bank exercised its option to accelerate the maturity of the promissory note under the "insecurity" clause. When the McJunkins were unable to pay the amount deemed due, the bank instituted the instant foreclosure action against the McJunkins. Bell Federal Savings and Loan Association, the holder of the first mortgage on the McJunkins' home, was joined as a defendant in the suit.

In their answer, the McJunkins asserted a two-count counterclaim against the Bartlett Bank. Count I alleged intentional infliction of mental distress, but was stricken with prejudice on the motion of the bank. Count II sounded in breach of contract. Subsequently, the bank voluntarily withdrew its foreclosure suit and the case proceeded to trial on count II of the McJunkins' counterclaim. As amended, count II alleged that the Bartlett Bank "unlawfully breached its contract with [the McJunkins], namely the promissory

note, by demanding payment in full prior to the due date of said note and by filing a complaint against the McJunkins in the nature of a mortgage foreclosure action." The counterclaim sought compensatory and punitive damages for, among other things, "substantial costs, expenses, attorneys' fees and other losses sustained by the McJunkins." Bartlett Bank's motion to strike was denied.

In its answer to count II of the counterclaim, the bank claimed as an affirmative defense that it accelerated the debt based on a good-faith belief that it was insecure pursuant to section 1—208 of the Uniform Commercial Code (Ill. Rev. Stat. 1985, ch. 26, par. 1— 208). The court struck this affirmative defense prior to trial and ordered the bank to refrain from filing further pleadings raising its good faith under the "insecurity" clause. In an order *in limine*, the court also excluded evidence concerning the McJunkins' relationship to Countryside Painting and Tracy McJunkins' guarantee of Countryside's obligations with the bank.

At trial, before Judge Wexler, the McJunkins called as an adverse witness Earl H. Gromer, the chairman of the board of Bartlett Bank. Despite objections by the bank concerning Gromer's lack of familiarity with the McJunkins' loan, he was allowed to identify various documents pertaining to the McJunkins' loan relationship with the bank. The McJunkins also presented the testimony of Steven Stark, an employee of Bell Federal Savings and Loan, who identified Bell Federal records purporting to show payments by the McJunkins on their mortgage with Bell Federal from 1979 through 1983. Tracy McJunkins testified about his loan relationship with Bell Federal and Bartlett Bank, stating that he had been current in his payments to both institutions. He also testified that after Bartlett Bank instituted its foreclosure action he sought to borrow money from Bartlett Bank, Bell Federal and Harris Bank to pay off the promissory note held by the Bartlett Bank, but he was unable to obtain a loan. He also stated that he paid his attorney $2,500 to represent him in the foreclosure action. During his testimony, a photograph of the McJunkins' home was admitted into evidence over the objection of the bank.

Dorothy McJunkins testified as to the payments made to Bartlett Bank and Bell Federal. She also testified about various doctor visits and medical bills to treat the physical and emotional stress allegedly caused by the bank's actions. At the close of the McJunkins' case, the trial court granted the bank's motion for a directed verdict on the issue of punitive damages.

The only testimony presented by the bank was that of Peter F.

Geraci, an attorney concentrating in bankruptcy and personal injury cases, who testified that he would have charged a maximum of $500 to represent the McJunkins in the foreclosure action. In various conferences with the trial judge out of hearing of the jury, counsel for the bank indicated a desire to call as witnesses Robert Ullbricht and Gordon Ramsey, who were loan officers with Bartlett Bank. The bank's counsel indicated that they would testify as to the reasons behind the bank's decision to call in the McJunkins' loan. However, when the trial judge reiterated his order excluding evidence of the bank's good faith and other transactions involving Countryside Painting, the bank never called Ullbricht and Ramsey to testify.

At the close of all the evidence, the trial judge denied Bartlett Bank's motion for a directed verdict. The judge then instructed the jury. Over the bank's objection, an instruction on proximate cause was given. The court refused to give the bank's proposed instructions on the applicability and definition of good faith under section 1—208 of the Uniform Commercial Code. The jury returned a verdict of $60,000 in favor of the McJunkins and against the bank. Judge Wexler subsequently retired and the post-trial matters of the cause were assigned to Judge Barth. On May 20, 1985, the post-trial judge granted the bank's motion in arrest of judgment and conditionally granted its motions for a judgment notwithstanding the verdict and for a new trial.

In granting the bank's motion in arrest of judgment, Judge Barth, the post-trial judge, found the Uniform Commercial Code was applicable and stated:

> "My reason for entering a motion in arrest for judgment is that the complaint does fail to contain a necessary allegation of lack of good faith on the part of the creditor here, the Bank, and that this was an essential allegation necessary for the [McJunkins] here ***."

His finding reversed a pretrial ruling by Judge Wexler that the McJunkins were under no obligation to plead and prove the bank's lack of good faith in this matter since the Uniform Commercial Code was inapplicable.

The disparate decisions by the two judges in the trial court reflects the confusion in the law regarding the applicability and impact of the Uniform Commercial Code in general and section 1—208 of the Code in particular in real estate transactions. Section 1—208 provides:

> "A term providing that one party or his successor in interest may accelerate payment or performance or require collat-

eral or additional collateral 'at will' or 'when he deems himself insecure' or in words of similar import shall be construed to mean that he shall have power to do so only if he in good faith believes that the prospect of payment or performance is impaired. The burden of establishing lack of good faith is on the party against whom the power has been exercised."

Section 1—208 is found with article I of the Code, which contains general provisions applicable to all transactions coming with the scope of the Uniform Commercial Code. 1 Hawkland, *Uniform Commercial Code Series* sec. 1—208:1, at 205 (1982).

■■ ■ The scope of the Code is broad, but it does not purport to usurp the whole field of law as to commercial transactions. (*Theo. Hamm Brewing Co. v. First Trust & Savings Bank* (1968), 103 Ill. App. 2d 190, 194, 242 N.E.2d 911; *Avco Delta Corp. v. United States* (7th Cir. 1972), 459 F.2d 436.) It is formally limited to personal property and, as a general rule, it does not extend to real estate and transactions relating to real property except to a very limited extent. (See Ill. Ann. Stat., ch. 26, pars. 1—101 to 2—725, General Introduction xlvii (Smith Hurd 1963); 1 Anderson, *Uniform Commercial Code* sec. 1—101: 20, at 19 (3d ed. 1981); 15A Am. Jur. 2d *Commercial Code* sec. 2, at 457 (1976).) For that reason there is authority that section 1—208 does not apply to real estate mortgage transactions. *Burrit Mutual Savings Bank of New Britain v. Tucker* (1981), 183 Conn. 369, 372, 439 A.2d 396, 399.

Nevertheless, there is a strong tendency among courts in Illinois and other jurisdictions to apply the Code directly or by analogy to non-Code transactions involving real property. (*Lake Bluff Heating & Air Conditioning Supply Co. v. Harris Trust & Savings Bank* (1983), 117 Ill. App. 3d 284, 452 N.E.2d 1362; see, *e.g., Best Fertilizers of Arizona, Inc. v. Burns* (1977), 116 Ariz. 492, 570 P.2d 179; *Olean v. Treglia* (1983), 190 Conn. 756, 463 A.2d 242; *Illingworth v. Bushong* (1984), 297 Ore. 675, 688 P.2d 379; *Wendling v. Cundall* (Wyo. 1977), 568 P.2d 888; 1 Anderson, *Uniform Commercial Code* sec. 1—101:20, at 19 (1981).) As evidence of this trend, a number of courts have applied section 1—208 to acceleration clauses contained in real estate contracts either by analogy or without addressing the question of its applicability (see *Abrego v. United Peoples Federal Savings & Loan Association* (1984), 281 Ark. 308, 664 S.W.2d 858 (applying State law of property); *Smith v. Union State Bank* (Ind. App. 1983), 452 N.E.2d 1059), or because the note in question was a negotiable instrument enforceable under the Code (see *Williamson v. Wanless* (Utah 1976), 545 P.2d 1145, 1148).

■ In the context of this case, however, we need not decide whether section 1—208 applies directly or by analogy to a transaction involving a promissory note secured by a real property mortgage because the parties incorporated the Code into their agreement. The promissory note states in the paragraph entitled "Remedies" that "[i]f a default shall occur, *** Bank may exercise any of the remedies of a secured party under the Uniform Commercial Code." By incorporating the Code's remedies, the parties also incorporated the Code's limitations on the exercise of those remedies, including the good-faith limitation on acceleration under an "insecurity" clause contained in section 1—208. Even where the Code is otherwise inapplicable, the parties may incorporate the Code into their agreement and that agreement will be given effect. *Southeast First National Bank v. LeGrace Co.* (Fla. App. 1978), 363 So. 2d 128, 129 n.1, *cert. dismissed* (1978), 362 So. 2d 1056; 1 Anderson, *Uniform Commercial Code* sec. 1—101:24, at 21 (3d ed. 1981).

Notwithstanding the above, the McJunkins rely on language in *Hildner v. Fox* (1974), 17 Ill. App. 3d 97, 100, 308 N.E.2d 301, to the effect that the Code is inapplicable where the bank upon default proceeds against realty under the law relating to real property by foreclosing on the mortgage. We believe the McJunkins read *Hildner* too broadly. *Hildner* involved solely article IX principles, particularly that article's "election of remedies" provision which are not at issue here. (17 Ill. App. 3d 93, 100, 308 N.E.2d 301; Ill. Rev. Stat. 1971, ch. 26, par. 9—501(4).) Neither Hildner nor the provision excluding "the creation or transfer of an interest in or lien on real estate" from article IX (Ill. Rev. Stat. 1985, ch. 26, par. 9—104(j)), answers the question of whether section 1—208 found in article I of the Code applies where a promissory note is secured by a real property mortgage. See *Kramer v. Exchange National Bank* (1985), 139 Ill. App. 3d 1093, 488 N.E.2d 568.

The bank, not surprisingly, asserts that section 1—208 is dispositive. However, even if section 1—208 applies, it does not necessarily follow that we must affirm the post-trial judgments here.

Where section 1—208 applies, the debtor has the burden of proving that the bank's decision to accelerate on the basis of insecurity was not made in good faith. (Ill. Rev. Stat. 1985, ch. 26, par. 1—208.) Although Illinois has not decided the question, the majority of courts from other jurisdictions have held that good faith under section 1—208 is tested by subjective standards in accordance with the Code's general definition of good faith as honesty in fact. (Annot., 61 A.L.R.3d 244; Ill. Rev. Stat. 1985, ch. 26, par. 1—201(19).) Under

a subjective standard, it is sufficient that a creditor honestly believes that he is insecure, regardless of whether such belief is justified. (*Quest v. Barnett Bank of Pensacola* (Fla. App. 1981), 397 So. 2d 1020; *Van Horn v. Van De Wohl, Inc.* (1972), 6 Wash. App. 2d 959, 497 P.2d 252.) Other courts, however, have injected objective criteria into the test of good faith under section 1—208 by also inquiring whether a reasonable person would have accelerated under the circumstances. *Brown v. Avemco* (9th Cir. 1979), 603 F.2d 1367; *Sheppard Federal Credit Union v. Palmer* (5th Cir. 1969), 408 F.2d 1369; *Kupka v. Morey* (Alaska 1975), 541 P.2d 740, 747; *Universal C.I.T. Credit Corp. v. Shepler* (1975), 164 Ind. App. 516, 329 N.E.2d 620; *Black v. Peoples Bank & Trust Co.* (Miss. 1983), 437 So. 2d 26; *Blaine v. G.M.A.C.* (1975), 82 Misc. 2d 653, 370 N.Y.S.2d 323; *Mitchell v. Ford Motor Credit Co.* (Okla. 1984), 688 P.2d 42, 45 n.5; see 2 Gilmore, Security Interests in Personal Property sec. 43.4, at 1197 (1965).

We need not decide which test of good faith under section 1—208 should be adopted in Illinois because, in the case at bar, the test to be applied to the bank's acceleration is discernable from the contract itself. Here, the promissory note states that in order to accelerate due to insecurity, the bank must "reasonably" consider itself to be insecure. The use of the term "reasonably" indicated a requirement of some rational basis for the bank's determination of insecurity (Black's Law Dictionary 1138 (5th ed. 1979), other than its mere subjective belief that there has been some impairment of its prospect of payment or performance. Although parties may not completely abrogate the obligation of good faith under the Code, we see no reason why the parties' agreement to incorporate a higher standard of good faith should not be given effect. The bank argues that its motion in arrest of judgment was properly granted because Illinois law, presumably section 1—208, required that McJunkins allege that the bank failed to act in good faith and they did not make that allegation. A motion in arrest of judgment may test the legal sufficiency of the pleadings. (23 Ill. L. & Prac. *Judgments* sec. 163 (1979).) Only matters which appeared or should have appeared on the face of the record can be urged. (*In re Munzer* (1975), 28 Ill. App. 3d 792, 329 N.E.2d 366.) Failure to state a cause of action is grounds for arresting judgment. (*O'Brien v. Chicago City Ry. Co.* (1920), 293 Ill. 140, 127 N.E. 389.) In reviewing the motion, every intendment of pleadings is taken in favor of a pleader. *Paris v. East St. Louis Ry. Co.* (1934), 275 Ill. App. 241, 245.

Even though section 1—208 applies, it does not necessarily fol-

low that lack of good faith is an essential allegation in the McJunkins' cause of action. Section 1—208 places the burden of establishing lack of good faith on the party against whom the power has been exercised (Ill. Rev. Stat. 1985, ch. 26, par. 1—208), but the Code defines the "burden of establishing" in terms of the burden of persuading the trier of fact at trial that the existence of the fact is more probable than its nonexistence. (Ill. Rev. Stat. 1985, ch. 26, par. 1—201(8).) The bank has not cited any case applying section 1—208 to hold that a cause of action was deficient because it failed to allege lack of good faith on the part of the creditor. Where the question was considered in another jurisdiction, it was held that the burden of proof rule declared by section 1—208 applies only at trial after all the evidence is before the court. *McKay v. Farmers' & Stockmen's Bank* (1978), 92 N.M. 181, 585 P.2d 325, *cert. denied* (1978), 92 N.M. 79, 582 P.2d 1292; 1 Anderson, *Uniform Commercial Code* sec. 1—208:51, at 465 (1981).

Moreover, even if lack of good faith constituted an essential allegation in the McJunkins' cause of action, the decision to grant the bank's motion in arrest of judgment must be reversed under the common law doctrine of aider by verdict. Under that doctrine, "a verdict is deemed to cure not only all formal and purely technical defects in a complaint, but also any defect in failing to allege, or in alleging imperfectly, any substantial facts which are essential to a right of action, provided the issue joined is such as necessarily requires, on the trial, proof of facts so omitted or imperfectly stated and if such facts can be implied from the allegations of the complaint by fair and reasonable intendment." *Gustafson v. Consumers Sales Agency, Inc.* (1953), 414 Ill. 235, 241, 110 N.E.2d 865; *Lasko v. Meier* (1946), 394 Ill. 71, 67 N.E.2d 162.

Here, count II of the McJunkins' counterclaim survived repeated attempts to have it stricken for failure to state a cause of action for breach of contract. An adequate complaint based on breach of contract must allege the evidence of a contract, plaintiff's performance of all contractual conditions required of him, facts of defendant's breach and the existence of damages as a consequence thereof. (*Martin-Trigona v. Bloomington Federal Savings & Loan Association* (1981), 101 Ill. App. 3d 943, 946, 428 N.E.2d 1028.) The McJunkins' counterclaim contained these allegations. It was not necessary for them to allege matters of evidence or particular words or actions from which the breach arose. (*Burns v. Epstein* (1953), 413 Ill. 476, 481, 109 N.E.2d 774.) Because a verdict was rendered, it was sufficient that the facts essential to the McJunkins' cause of

action appeared by reasonable implication. (See *Swager v. Couri* (1979), 77 Ill. 2d 173, 395 N.E.2d 921.) Taking every intendment of the pleading in favor of the pleader (*Paris v. East St. Louis Ry. Co.* (1934), 275 Ill. App. 241), the allegations regarding lack of good faith, which the bank asserts is essential to their cause of action, may be fairly implied from the allegations in the counterclaim. Hence any defect in failing to plead and prove lack of good faith was cured by the verdict and the motion in arrest of judgment should have been refused.

Having determined that the unconditional ruling by the post-trial judge with respect to the motion in arrest of judgment was erroneous, it is our duty to review the post-trial conditional rulings. *Duffek v. Vanderhei* (1980), 81 Ill. App. 3d 1078, 401 N.E.2d 1145.

In contrast to the motion in arrest of judgment, a motion for judgment notwithstanding the verdict tests the sufficiency of evidence. (See *American College of Surgeons v. Lumbermens Mutual Casualty Co.* (1986), 142 Ill. App. 3d 680, 491 N.E.2d 1179.) The legal sufficiency of the pleadings are outside the scope of the motion. (*Farmer v. Alton Building & Loan Association* (1938), 294 Ill. App. 206, 210, 13 N.E.2d 652.) When deciding a motion for judgment *n.o.v.*, the court may consider only the competent evidence introduced at trial. (*People ex rel. Reynolds v. Aldridge* (1982), 107 Ill. App. 3d 679, 684, 437 N.E.2d 1268.) The court may not consider errors in the admission or exclusion of evidence. (*Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 128, 171 N.E.2d 60; *Farmer v. Alton Building & Loan Association* (1938), 294 Ill. App. 206, 210, 13 N.E.2d 652.) The standards of entering a judgment notwithstanding the verdict were set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 229 N.E.2d 504.) It was there said: "In our judgment verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all the evidence, when viewed in the aspect most favorable to the opponent so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill. 2d 494, 510, 229 N.E.2d 504.) The McJunkins assert that the proper standard was not applied when the judgment *n.o.v.* was entered. However, we do not consider this question since the judgment notwithstanding the verdict must be reversed in any event.

In this case, the judgment *n.o.v.* was entered based on the finding that the McJunkins had failed to prove an essential element of their cause of action, namely lack of good faith. Even though evidence of good faith was excluded upon the motion of the McJunkins, the fact remains that the absence of evidence on this issue was due

to the court's order *in limine* excluding evidence of good faith. By entering judgment *n.o.v.* on the ground that the McJunkins had failed to prove the allegedly essential element of lack of good faith, the court was in effect penalizing them for failing to introduce evidence that had been excluded by previous order of the court. This was error. Judgment *n.o.v.* is not a proper procedural device for correcting errors in the exclusion of evidence. *Gundich v. Emerson-Comstock Co.* (1960), 21 Ill. 2d 117, 128, 171 N.E.2d 60.

■ Turning to the conditional grant of a new trial, we recognize that decision to grant a new trial is a matter within the trial court's broad discretion, the exercise of which will not be disturbed absent clear abuse of that discretion. (*McCracken v. Westinghouse Air Brake Co.* (1981), 103 Ill. App. 3d 26, 430 N.E.2d 539, *appeal denied* (1982), 91 Ill. 2d 560; 28 Ill. L. & Prac. *New Trial* sec. 92 (1957).) A new trial should not be granted unless there are strong grounds to believe that the merits of the case have not been fully and fairly tried and that the granting of such relief will be in the interest of justice. (28 Ill. L. & Prac. *New Trial* sec. 11 (1957).) Errors in the exclusion of evidence may constitute grounds for a new trial, where the errors were serious and prejudicial. (*Phelan v. State Farm Mutual Automobile Insurance Co.* (1983), 114 Ill. App. 3d 96, 105, 448 N.E.2d 579, *appeal denied* (1983), 96 Ill. 2d 550.) We hold the grant of a new trial was not an abuse of discretion.

■ This case turns on whether the bank's exercise of its contractual discretion to accelerate under the "insecurity" clause constituted breach of contract. Although the McJunkins emphasized the fact that the bank called the loan prior to the date when final payment was due, the contract clearly allows the bank to accelerate the maturity of the note in the event the bank reasonably considered itself to be insecure. Because the promissory note in question gives the bank contractual discretion to accelerate in the event of insecurity, a requirement that the bank exercise its discretion in good faith was implied into the agreement by the parties' incorporation of the Code into their agreement. Therefore, a determination as to whether the bank breached its agreement with the McJunkins by accelerating under the "insecurity" clause necessarily required an examination into the question of whether the bank exercised its contractual discretion in good faith. Evidence on this issue should have been admitted. Its exclusion prejudiced the bank and precluded the jury from deciding the central issue of the case—whether the bank's acceleration of the McJunkins' note constituted a breach of contract.

Because no evidence on the issue of good faith was introduced at

trial and because good faith is a question of fact requiring consideration of all circumstances attending the transaction (Annot., 61 A.L.R.3d 244 (1975)), we leave for the jury to determine whether the bank honestly believed itself to be insecure and whether its belief was rationally based where the dispute regarding the guarantee was unresolved, the bank's security interest in the collateral was unimpaired and there was no indication that liability under the guarantee would adversely affect the McJunkins' ability to repay the note at the time the bank accelerated.

As to the excluded evidence of the McJunkins relationship to Countryside and Tracy's guaranty, Illinois courts have recognized that evidence of other transactions involving parties to contract litigation may be properly received where the other transactions were not too remote in time, relate analogously to the same general subject matter, and tend to show the background of the transaction involved and the motives of the parties in their subsequent conduct. See *Beatrice Foods Co. v. Gallagher* (1964), 47 Ill. App. 2d 9, 24, 197 N.E.2d 274, *appeal denied* (1960), 30 Ill. 2d 626; *Reilly Tar & Chemical Corp. v. Lewis* (1942), 326 Ill. App. 84, 61 N.E.2d 290.

In this case, Tracy McJunkins' guaranty of some of Countryside's corporate obligations to the bank met the above standard and evidence regarding this other transaction should have been admitted. The bank's loan to the McJunkins was related to Tracy's guaranty of Countryside's obligations to the bank in that the McJunkins used the loan to acquire an interest in Countryside. And even though the guaranty was executed prior to the note in question here, the guaranty occurred during the McJunkins' long-standing loan relationship with the bank. A relationship primarily consisting of a single debt that was renewed periodically until the bank accelerated it following Countryside's default on its obligations to the bank. Thus, the guaranty and the note which was accelerated were related and not too remote in time.

Clearly, evidence regarding the McJunkins' relationship to Countryside was pertinent to the background of the transaction in question here. (See *Sears v. First Federal Savings & Loan Association* (1971), 1 Ill. App. 3d 621, 627, 275 N.E.2d 300, *appeal denied* (1972), 49 Ill. 2d 577.) Moreover, it also tended to show the motives of the bank in its subsequent decision to accelerate the note and institute a foreclosure action against the McJunkins. (See *Reilly Tar & Chemical Corp. v. Lewis* (1942), 326 Ill. App. 84.) Although not ordinarily relevant in a breach of contract action (*Album Graphics v. Beatrice Foods Co.* (1980), 87 Ill. App. 3d 338, 350, 408 N.E.2d

1041), the motives of a party exercising contractual discretion may be examined in determining whether the exercise of contractual discretion constitutes breach of contract. (See *Dayan v. McDonald's Corp.* (1984), 125 Ill. App. 3d 972, 466 N.E.2d 958, *appeal denied* (1984), 101 Ill. 2d 581.) Certainly, a determination as to whether the acceleration and the mortgage foreclosure action constituted a breach of contract must take place within the context of the overall transaction. See *Peterson Bank v. Langendorf* (1985), 136 Ill. App. 3d 537, 540, 483 N.E.2d 279, *appeal denied* (1986), 111 Ill. 2d 568.

In an acceleration case such as this, the jury was also entitled to consider the financial ability of the McJunkins to repay the loan in determining whether the bank breached its contract by accelerating. The adverse impact on the McJunkins' financial well-being caused by either their relationship with the defunct Countryside or by Tracy's guaranty was clearly relevant to this inquiry. (See *Custom Panel Systems, Inc. v. Bank of Hampton* (1977), 143 Ga. App. 681, 239 S.E.2d 558; *Farmer's Cooperative Elevators, Inc. v. State Bank* (Iowa 1975), 236 N.W.2d 674; *Van Bibber v. Norris* (1981), 275 Ind. 555, 419 N.E.2d 115.) Because the evidence regarding the McJunkins relationship to Countryside and Tracy's guaranty was related, relevant and not too remote in time with the transaction in question, it was error to exclude it. Therefore, the court below was justified in granting the bank's motion for a new trial.

In view of our decision, we need not consider the bank's other arguments that jury instructions and the admission into evidence of a photograph of the McJunkins' home justified a new trial. For the reasons stated above, the judgment of the court below is reversed in part, affirmed in part and remanded for a new trial.

Affirmed in part, reversed in part and remanded.

QUINLAN, P.J., and BUCKLEY, J., concur.