ALAN H. ISRAEL, on Behalf of the Dundee-Landwehr Limited Partnership, Plaintiff-Appellant, v. NATIONAL CANADA CORPORATION, Defendant-Appellee.

First District (1st Division)   No. 1—92—3091

Opinion filed September 25, 1995.—Rehearing denied January 8, 1996.

WOLFSON, J., concurring in part and dissenting in part.

William J. Harte and Joan M. Mannix, both of William J. Harte, Ltd., and Edward T. Joyce and Arthur W. Aufmann, both of Edward T. Joyce, P.C., both of Chicago, for appellant.

David G. Lynch and Stanley J. Adelman, both of Rudnick & Wolfe, of Chicago, for appellee.

JUSTICE BRADEN delivered the opinion of the court:

Plaintiff, Alan H. Israel (Israel), appeals from an August 22, 1990, order by the circuit court of Cook County, dismissing counts III and V of Israel's fourth amended complaint, as well as an August 7, 1992, order granting judgment in favor of defendant, National Canada Corporation (NCC).

We affirm.

Israel argues that the trial court erred in ruling that (1) Israel and the 3210 Partnership failed to establish, by a preponderance of the evidence, an agency relationship between Focus Real Estate Finance Company (Focus) and NCC; (2) NCC's delays in funding the 3210 Partnership loan did not constitute a material breach estopping NCC from rescinding the loan agreement; (3) a material adverse change in Israel's financial condition constituted a material breach of the loan agreement; (4) Israel experienced a material adverse change in his financial condition; (5) NCC could "mend its hold" in order to articulate an excuse for its refusal to perform under the loan agreement; (6) three letters allegedly related to the material adverse change in Israel's financial condition were inadmissible; and (7) Israel failed to plead a cause of action for intentional interference with contractual relations and common law fraud.

The record indicates that Israel was the general partner of the Dundee-Landwehr Partnership (3210 Partnership), an Illinois limited partnership. The 3210 Partnership was the beneficial owner of real estate and improvements located at the northwest corner of Landwehr and Dundee Roads, in Northbrook, Illinois (property). Legal title to the property was held by La Salle National Bank, as trustee (Land Trustee) under a trust agreement. During the summer of 1987, Israel submitted a loan application to Focus, on behalf of the 3210 Partnership, for financing to construct a commercial office building on the property. On August 4, 1988, Focus issued a mortgage commitment letter to Israel, approving a construction loan to the Land Trustee in the amount of $14,975,000 (Focus Commitment). Under the terms of the Focus Commitment, the construction loan was to be secured by a first mortgage lien against the property. In addition, the 3210 Partnership was to provide Focus with an independent appraisal of the value of the new construction prior to closing.

The Focus Commitment was conditioned upon Focus' ability to obtain an additional party to participate as a co-lender in funding the loan. On November 17, 1987, Focus was formally advised by National Bank of Canada via a mortgage commitment letter that it and/or one of its affiliates, including NCC, would participate in the subject construction loan (NCC Commitment). The Focus and NCC Commitments required Israel to personally guarantee the completion of the proposed construction and the payment of interest due under the terms of the construction loan. Prior to closing, Israel was required to submit his personal financial statement to Focus and NCC for review. Focus and NCC subsequently executed a written agreement under which NCC was to participate as a co-lender for the subject construction loan (Participation Agreement). On or about December 17, 1987, the 3210 Partnership, Land Trustee, Focus and NCC executed a construction loan agreement (loan agreement).

On December 28, 1987, (1) the parties executed the documents necessary to open the subject loan; (2) Israel submitted the 3210 Partnership's first draw request under the loan agreement, in the total amount of $2,419,799; and (3) the full amount of the draw request was funded by Focus with minor adjustments.

Israel subsequently submitted five successive draw requests on behalf of the 3210 Partnership. The record indicates that each draw request complied with the conditions precedent to funding under the loan agreement. Under the loan agreement, Focus and NCC were required to disburse funds requested within five business days from receipt of a funding request by the 3210 Partnership. The record reveals that, with the exception of the first funding request, Focus and NCC failed to disburse funds within the five-day period. Specifically, the full amount of the second draw request was funded 11 days after the funding request had been submitted, the full amount of the third draw request was funded 28 days after the funding request had been submitted, the full amount of the fourth draw request was funded 36 days after the funding request had been submitted and the full amount of the fifth draw request was funded 28 days after the funding request had been submitted.

On July 20, 1988, Israel submitted the 3210 Partnership's sixth draw request to Focus and NCC under the construction loan agreement. The record indicates that this draw request also complied with the conditions precedent to funding. Focus and NCC refused to disburse funds as required under the terms of the loan agreement. The record indicates that on August 2, 1988, NCC and Focus advised Israel and the 3210 Partnership that certain construction bonds would be required before any portion of the sixth draw request would

be disbursed. The record indicates that Israel supplied the construction bond as requested. The record indicates that Focus and NCC expressed their concerns with respect to the status of Israel's personal financial condition and, as such, continued to refuse to authorize further disbursements under the loan agreement.

On September 29, 1988, Focus served Israel and the 3210 Partnership with a written notice of default under the loan agreement. Focus cited the existence of seven instances of default, including a material change in Israel's financial condition.

The record indicates that Israel subsequently brought an action against NCC and its co-lender, Focus, on behalf of the 3210 Partnership, alleging claims of breach of the loan agreement, fraud, and intentional interference with contractual relations. The fraud and intentional interference claims were subsequently dismissed before trial for failure to state a cause of action. Before trial, the 3210 Partnership settled with Focus, which was subsequently dismissed from the case. Israel proceeded to trial on the breach of contract claim against NCC.

The trial court entered judgment in favor of NCC and against Israel and the 3210 Partnership. The trial court found that (1) Israel and the 3210 Partnership failed to establish, by a preponderance of the evidence, an agency relationship between Focus and NCC; (2) Israel and the 3210 Partnership breached the loan agreement when Israel experienced a material adverse change in his financial condition; and (3) after Israel's breach, NCC had no duty or obligation to disburse funds under the loan agreement.

The first issue raised on appeal is whether Israel and the 3210 Partnership established, by a preponderance of the evidence, an agency relationship between Focus and NCC. Israel asserts that the trial court erroneously concluded that Focus was not NCC's agent with respect to the loan agreement. Specifically, Israel contends that the evidence, as well as the admissions of counsel, established an agency relationship between NCC and Focus with respect to the loan agreement.

The role of the reviewing court is to determine whether the trial court's findings are contrary to the manifest weight of the evidence. (*Ruggio v. Ditkowsky* (1986), 147 Ill. App. 3d 638, 642, 498 N.E.2d 747, 750.) For a judgment to be against the manifest weight of the evidence, an opposite conclusion must be clearly evident. (*Wilmette Partners v. Hamel* (1992), 230 Ill. App. 3d 248, 256, 594 N.E.2d 1147, 1184.) A reviewing court may not reverse a judgment merely because different conclusions could be drawn or because the reviewing court disagrees, so long as there is evidence to support the judgment. *Wil-*

*mette Partners*, 230 Ill. App. 3d at 256, 594 N.E.2d at 1184; *Ruggio*, 147 Ill. App. 3d at 642, 498 N.E.2d at 750.

■ Under Illinois law, agency is a consensual, fiduciary relationship between two legal entities whereby the principal has the right to control the manner and method in which work is performed by the agent and the agent has the right to effect legal relations of the principal. *State Security Insurance Co. v. Frank B. Hall & Co.* (1994), 258 Ill. App. 3d 588, 595, 630 N.E.2d 940, 945.

Here, Focus and NCC entered into a participation agreement for the subject construction loan. The record reveals that paragraph 6-A of the participation agreement reads:

> "The principals shall service the credit without charge or fee to the participant. Such servicing shall include the review and evaluation of all requests by borrower for advances, the obtaining and review of updated title reports in accordance with the agreement and subject to the provisions of Paragraph 9(c) hereof with respect to property, inspections of the property, and improvements thereto performed by the principal or its duly authorized representative, the maintenance throughout the terms of this agreement of hazard insurance coverage on the property, the enforcement of the loan documents including without limitation the delivery of any notices of default, the taking of any action and making of any determination provided for herein or in the loan documents, and all other action normally taken by the principal with respect to loans of comparable nature in which no participation is granted."

The existence of an agency relationship is a factual question which must be determined by the trier of fact, and the party alleging the agency relationship must prove it by a preponderance of the evidence. *Granite Properties Ltd. Partnership v. Granite Investment Co.* (1991), 220 Ill. App. 3d 711, 714, 581 N.E.2d 90, 92.

■ Here, the trial court's finding of no agency relationship between NCC and Focus was not contrary to the manifest weight of the evidence. The record indicates that NCC had no right to control the manner and method in which the loan agreement was serviced by Focus. NCC deferred all questions related to loan servicing to Focus. The record reveals that NCC and Focus merely entered into a participation agreement which expressly defined rights and duties of each party as they relate to the financing provided under the loan agreement. The record is devoid of any documentation or testimony evidencing NCC's control of services provided under the loan agreement. A careful review of the record reveals that Focus' administrative duties under the participation agreement were not sufficient to establish that Focus acted as an agent of NCC. (*Wapensky v. John Hancock Mutual Life Insurance Co.* (N.D. Ill. 1991), 774 F. Supp.

1119.) There is no evidence that Focus could in any way affect the legal relations of NCC under the loan agreement. NCC's legal rights and duties were defined by the loan agreement and the participation agreement, respectively.

Even assuming, *arguendo*, that NCC and Focus had a principal-agent relationship and that the trial court erred in holding to the contrary, such error is harmless. The record simply does not support Israel's argument that the trial court's determination may have substantially prejudiced or unduly affected the outcome of the trial.

■ The next issue raised on appeal is whether NCC's delays in funding under the loan agreement constituted a material breach estopping NCC from rescinding the loan agreement. Israel contends that NCC breached the loan agreement prior to any material change in Israel's financial condition and that NCC should have been estopped from rescinding the loan agreement. We cannot agree.

The record reveals that NCC never sought to rescind the loan agreement. The record reveals that NCC merely refused to continue funding disbursements in response to a material adverse change in Israel's financial condition, as provided for under the express language of the loan agreement.

Israel relies on *Devon Bank v. Schlinder* (1979), 72 Ill. App. 3d 147, 390 N.E.2d 447, for the proposition that one party's breach of contract constitutes a *prima facia* defense to the allegation that the other party has defaulted under a contract. Israel argues that delays in funding Israel's draw requests two through five, combined with NCC and Focus' refusal to fund draw requests six and seven, constituted a material breach of the loan agreement. Israel suggests that under *Devon Bank* these funding delays constitute a defense to any attempt by NCC and Focus to rescind the contract.

*Devon Bank* is distinguishable. The delayed funding, in the case at bar, constituted only a partial breach. It is uncontroverted that each of these requests was ultimately funded by NCC and Focus. Therefore, the aforementioned funding delays would constitute, at most, a partial breach of the loan agreement.

Under the holding in *Devon Bank*, " '[a] partial breach by one party *** does not justify the other party's subsequent failure to perform; both parties may be guilty of breaches, each having a right to damages.' " (*Devon Bank*, 72 Ill. App. 3d at 154, 390 N.E.2d at 452, quoting 4 A. Corbin, Corbin on Contracts § 946, at 811 (1951).) The record is also devoid of any evidence that Israel incurred damages from the delay in funding draw requests two through five. Therefore, the trial court properly concluded that NCC's delays in funding the 3210 Partnership loan did not constitute a material breach estopping

NCC from refusing to further disburse monies under the loan agreement.

The next issue to be addressed is whether the manifest weight of the evidence supports the trial court's conclusion that a material adverse change in Israel's financial condition constituted a material breach of the loan agreement. Israel argues that the court erred when it concluded that a material adverse change in Israel's financial condition constituted a material breach of the loan agreement. We disagree.

In Illinois only a material breach of a contract provision will justify nonperformance by the other party. (*Borys v. Rudd* (1990), 207 Ill. App. 3d 610, 618, 566 N.E.2d 310, 315.) Whether a breach of contract is material, however, is a question to be decided on the inherent justice of the matter. (*Rogers v. Balsley* (1993), 240 Ill. App. 3d 1005, 1011, 608 N.E.2d 1288, 1291-92; *Hanson v. Duffy* (1982), 106 Ill. App. 3d 727, 435 N.E.2d 1373.) Whether a party has committed breach of contract is a question of fact, which will not be disturbed on review unless the finding is against the manifest weight of the evidence. *Borys*, 207 Ill. App. 3d at 618, 566 N.E.2d at 315.

The record contains testimony that NCC required Israel's personal guaranty as a condition of entering into the loan agreement. Moreover, the loan agreement contained a condition precedent under which NCC's obligation to lend and disburse loan proceeds was terminated upon any material adverse change in Israel's financial condition subsequent to the execution of the agreement. This testimony contradicts Israel's assertion that NCC did not rely upon Israel's financial condition in deciding whether to enter into the loan agreement. The argument that NCC relied on other factors and failed to verify information in Israel's financial statement is unpersuasive. The manifest weight of the evidence supports the trial court's conclusion that the change in Israel's financial condition constituted a material breach of the agreement.

The next issue to be addressed is whether the manifest weight of the evidence supports the trial court's conclusion that a material adverse change in Israel's financial condition occurred between the date of the loan agreement and the date Focus declared default. Israel contends that a comparison of two of Israel's financial statements shows that there was no material adverse change in his financial condition. We disagree.

Under contract law, the party seeking to enforce the contract has the burden of proving that he has substantially complied with all material terms of the contract. (*Goldstein v. Lustig* (1987), 154 Ill. App. 3d 595, 507 N.E.2d 164.) The issue of whether a material adverse

change in Israel's financial condition occurred is a question of fact and will not be disturbed on review unless the finding is against the manifest weight of the evidence. *Barrows v. Maco, Inc.* (1981), 94 Ill. App. 3d 959, 968, 419 N.E.2d 634, 640.

■ Here, the trial court properly determined that there had been a material adverse change in Israel's financial condition. The record reveals (1) that Israel's liquid assets decreased between September 1988 and October 1987; (2) that. certain assets listed in Israel's financial statement consisted of equity in a certain office building project located at 3400 Dundee Road, Chicago, Illinois; and (3) that the partnership which owned the 3400 Dundee project had commenced bankruptcy proceedings subsequent to execution of the loan agreement.

Israel argues that its expert witness testified that there was no adverse change in his financial condition. This argument is unpersuasive given that the trier of fact is entitled to weigh the evidence presented. Under Illinois law, the weight of testimony of experts is a question for the trier of fact. (*Doser v. Savage Manufacturing & Sales, Inc.* (1990), 142 Ill. 2d 176, 568 N.E.2d 814.) For the aforementioned reasons, the manifest weight of the evidence supports the trial court's conclusion that there was a material adverse change in Israel's financial condition during the life of the subject loan agreement.

■ The next issue on appeal is whether the trial court erroneously permitted NCC to "mend its hold" in order to articulate an excuse for its refusal to perform under the loan agreement. Israel contends the trial court erroneously permitted NCC to "mend its hold." We disagree.

Relying on *Gibson v. Brown* (1905), 214 Ill. 330, 73 N.E. 578, Israel argues that at no time prior to NCC's refusal to fund did NCC indicate that a material adverse change in Israel's financial condition was the basis for its refusal to perform under the terms of the loan agreement. Israel contends that raising this condition was only "the last in a string of baseless reasons for refusing to fund" and violates long-established Illinois law.

Under Illinois law, a party may justify an asserted termination, rescission, or repudiation of a contract by proving that there was, at the time, an adequate cause, although it did not become known to him until later. (*IK Corp. v. One Financial Place Partnership* (1990), 200 Ill. App. 3d 802, 815, 558 N.E.2d 161, 170.) Illinois law requires a defendant in a breach of contract claim to stand by the first defense raised after the litigation has begun. However, the law does not require that the defense be asserted at the time the contract is terminated. Ordinarily the party terminating the contract need not

explain his reason at the time of termination, providing that some legally adequate reason exists. (*College Point Boat Corp. v. United States* (1925), 267 U.S. 12, 15-16, 69 L. Ed. 490, 493, 45 S. Ct. 199, 200-01; *Kantzler v. Grant* (1878), 2 Ill. App. 236, 238.) If the legal excuse for nonperformance exists at the time of termination, the terminating party may rely on the excuse in a breach of contract action even though he was unaware that the excuse existed at the time he terminated. (*First Commodity Traders, Inc. v. Heinhold Commodities, Inc.* (7th Cir. 1985), 766 F.2d 1007, 1013.) Here, NCC did not switch its position at trial. Israel had notice of the condition precedent to funding, via the written terms of the loan agreement.

■ The next issue we must address is whether the trial court erroneously refused to admit into evidence three letters allegedly relating to the material adverse change in Israel's financial condition. Israel contends that the trial court committed prejudicial error in refusing to admit into evidence three letters from NCC's attorneys.

Admission of evidence is a matter within the discretion of the trial court and evidentiary rulings will not be reversed absent an abuse of discretion. (*Jackson v. Pellerano* (1991), 210 Ill. App. 3d 464, 471, 569 N.E.2d 167, 172.) Errors in the exclusion of evidence may constitute grounds for a new trial where the errors are serious and prejudicial. (*Bartlett Bank & Trust Co. v. McJunkins* (1986), 147 Ill. App. 3d 52, 63, 497 N.E.2d 398, 405.) The burden is on the party seeking reversal to establish prejudice. (*Jackson*, 210 Ill. App. 3d at 471, 569 N.E.2d at 172.) Israel has not met this burden in the case at bar.

Here, we need not address whether the letters were improperly excluded, where the record is devoid of any evidence that the exclusion of such letters was prejudicial to Israel. The record reveals that the letters would have shown that NCC was unsure whether Israel suffered a material adverse change in his financial condition. Nowhere in the letters is there any evidence probative of Israel's finances. Nor are there any statements contradicting NCC's claim that he had experienced a material adverse change in his financial condition.

Alternatively, any error excluding the letters would have been harmless because it would not have changed the outcome of the case. (*Kim v. Evanston Hospital* (1992), 240 Ill. App. 3d 881, 891, 608 N.E.2d 371, 378.) Reversal is not warranted in the case at bar because the exclusion did not materially affect the result. (*Yates v. Chicago National League Ball Club, Inc.* (1992), 230 Ill. App. 3d 472, 486, 595 N.E.2d 570, 581.) Careful review of the record indicates that exclusion of the aforementioned letters did not prevent the trial court from reaching its determination that a material adverse change in Israel's financial condition had occurred.

■ The next issue on appeal is whether Israel failed to properly plead claims against NCC for intentional interference with contractual relations and common law fraud. Israel argues that the trial court erred in dismissing Israel's claim for tortious interference with contract for failing to state a cause of action. We disagree.

On review of dismissal for failure to state a cause of action, this court must determine whether the well-pleaded allegations of the complaint, when interpreted in the light most favorable to the plaintiff, are sufficient to set forth a cause of action upon which relief must be granted. (*Dix Mutual Insurance Co. v. LaFramboise* (1992), 149 Ill. 2d 314, 318-19, 597 N.E.2d 622, 624.) In *Chapman v. Crown Glass Corp.* (1990), 197 Ill. App. 3d 995, 597 N.E.2d 256, the court explained that the elements of the tort of intentional interference with contractual rights are (1) the existence of a valid enforceable contract between the plaintiff and another; (2) the defendant's awareness of the relationship; (3) the defendant's intentional and unjustified inducement of a breach of the contract which causes a subsequent breach by the other; and (4) damages. (*Chapman*, 197 Ill. App. 3d at 1005, 597 N.E.2d at 262.) Here, contrary to Israel's contentions, the factual allegations pleaded in count III of the fourth amended complaint do not sufficiently plead a claim against NCC for tortious interference with the contract with the general contractor for the 3210 Partnership project. Inducement to breach a contract involves acts aimed at parties other than a plaintiff and cause those parties to breach a contract held by that plaintiff. (*Mitchell v. Weiger* (1980), 87 Ill. App. 3d 302, 305, 409 N.E.2d 38, 40.) Count III did not allege that NCC's actions caused CD Group, a third party, to breach its contract with Israel. Therefore, the facts as pleaded by Israel could not conceivably state a cause of action against NCC.

The requisite elements of common law fraud are (1) a false statement of material fact, intentionally made; (2) the party to whom the statement was made had a right to rely on it and did so; (3) the statement was for the purpose of inducing the other party to act; and (4) reliance by the person to whom the statement was made which led to his injury. *Zimmerman v. Northfield Real Estate, Inc.* (1986), 156 Ill. App. 3d 154, 161, 510 N.E.2d 409, 412.

Here, contrary to Israel's contentions the factual allegations pleaded in count III of the fourth amended complaint do not sufficiently plead a claim against NCC for common law fraud. Israel alleges that NCC participated in a scheme to defraud. Under Illinois law, representations of a future intent to defraud do not constitute a basis for a fraud claim. (*Baker, Bourgeois & Associates v. Taylor* (1980), 84 Ill. App. 3d 909, 914, 410 N.E.2d 55, 59.) The record reveals

that count V is also devoid of any allegations that NCC made any fraudulent misrepresentations, that Israel relied on any representation by NCC, or that NCC even participated in the scheme. As such, the trial court properly dismissed counts III and V of the fourth amended complaint.

For the aforementioned reasons, we affirm the decision of the circuit court of Cook County.

Affirmed.

CAMPBELL, P.J., concurs.

JUSTICE WOLFSON, concurring in part and dissenting in part:

I agree that the trial court correctly dismissed the counts for intentional interference with contractual relations and common law fraud. I also believe the trial court erred when it refused to admit three letters NCC officials wrote to Focus after the notice of default. That error cannot be easily dismissed. I respectfully dissent from that part of the majority opinion that affirms the trial court's judgment on the breach of contract claim.

It was Israel's theory at trial that Focus intentionally sabotaged the project for reasons having nothing to do with his financial position. Israel contended at trial and in this appeal that the delays in funding draw requests four and five and the refusal to fund draw request six were wilful breaches of the contract by Focus and NCC.

In the three letters that were excluded, NCC, after the first notice of default, told Focus it was unable to determine whether a material adverse change of position in Israel's financial position had occurred. Further, NCC said that even if a material adverse change had occurred, it could not agree to Focus' declaration of default. NCC described the declaration of default as a "precipitous action." In one of the letters, NCC said it should resume funding the loan.

These letters, then, went directly to the issue of whether the claim of adverse material change in position was a subterfuge, a phony excuse to stop the funding. Without the letters, the plaintiff's theory collapsed for lack of a foundation.

I do not say we should second-guess the trial judge's factual determination of the issue of adverse material change in position. I do say we should protect a litigant's right to have relevant and important evidence considered by the trier of fact.

I do not see how we can say "the record is devoid of any evidence that the exclusion of letters was prejudicial to Israel." NCC was a post-litigation convert to Focus' stated reason for refusing to fund the

project. The letters indicate NCC did not seriously believe there was an adverse material change in Israel's position.

NCC should be bound by Focus' conduct, as well as its own. This was a joint enterprise between NCC and Focus. Their participation agreement expressly said that Focus was to act as "servicing agent" for the loan. At trial, the judge said: "Well he [counsel for NCC] concedes that for the purpose of disbursing the loan, he agrees that Focus represented, in fact, NCC." That was an accurate statement by the trial court.

In its brief in this court, NCC refers to the agency question as a "non-issue." The majority finds the record does not support Israel's argument that the trial court's determination of nonagency prejudiced or unduly affected the outcome of the trial.

The agency issue ought to be taken more seriously. If NCC is bound by Focus' conduct, it is part of any wilful breach by Focus that may be proved by the evidence. I believe Israel should have a fair chance to prove his theory. For that reason, I would reverse the trial court's judgment and remand the breach of contract case for a new trial.