GILBERT ROGERS *et al.*, Plaintiffs and Counterdefendants-Appellees, v. MARY ANN BALSLEY, Defendant and Counterplaintiff-Appellant.

Second District   No. 2—92—0498

Opinion filed February 24, 1993.

Anthony J. Trotto, of Addison, for appellant.

Michael E. Coppedge, of Cowlin, Ungvarsky, Curran & Coppedge, of Crystal Lake, for appellees.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Mary Ann Balsley, appeals the judgment of the circuit court which ruled in favor of plaintiffs, Gilbert and Anna Rogers, on their breach of contract claim arising out of a real estate deal. Defendant raises on review the issues of whether the trial court erroneously found her liable to plaintiffs and whether the award of damages was error.

On February 24, 1989, plaintiffs, as sellers, signed a contract with Walter and Joyce Belew for the sale of their home in Crystal Lake (the Belew contract). The Belew contract was conditioned on the Belews securing a noncontingent contract for the sale of their home. On February 26, plaintiffs entered into a contingent contract with Glen Bankes to purchase a farm in Belvidere for $117,000.

On March 4, plaintiffs, as sellers, signed the contract with defendant, and defendant paid $5,000 in earnest money on the purchase price of $98,000. The contract was subject to plaintiffs securing a termination of the Belew contract on or before March 30. The mortgage contingency clause provided that the contract was subject to defendant procuring financing within 45 days after the acceptance date and the cancellation of the Belew contract. The contract provided that defendant's financing was to be secured by a mortgage on her home in Glendale Heights. The provision further stated: "If after making every reasonable effort, Buyer is unable to procure such commitment within the time specified herein and so notifies Seller within that time, this contract shall become null and

void and all earnest money shall be returned to Buyer; *if Seller is not so notified, it shall be conclusively presumed that Buyer has secured such commitment or will purchase said property without mortgage financing.*" (Emphasis in original.) The contract set a closing date of May 10, 1989. At the bottom of the front page were the parties' signatures and their home addresses.

The back side of the contract consisted of 20 paragraphs of conditions. Paragraph J provided: "All notices herein required shall be in writing and shall be served on the parties at the addresses following their signatures. The mailing of a notice by registered mail, return receipt requested, shall be sufficient notice." The final paragraph stated that the losing party "shall pay all reasonable attorney's fees and costs incurred by the prevailing party in enforcing the terms and provisions of this contract, including forfeiture."

On March 15, 1989, plaintiffs cancelled the Belew contract and paid the Belews $300. They notified defendant of the cancellation of the Belew contract on March 17. On April 20, defendant's attorney sent a letter to plaintiffs' realtor and sent a copy of the letter to plaintiffs' attorney. The letter stated that defendant was declaring the contract null and void because she could not obtain financing. Defendant requested the return of her earnest money. On April 28, plaintiffs' attorney sent defendant the following letter:

"Dear Mrs. Balsley:

Because of your repudiation of the Real Estate Sales Contract, Acceptance dated February 27, 1989, for the purchase of [the] property ***, I am deeming you to be in material breach of same and on behalf of my clients, Gilbert and Anna Rogers, are declaring the contract to be in forfeiture.

We will, however, allow you 24 hours after receipt of this correspondence to advise us in writing of your intention to go forward with the contract as my clients stand ready, willing and able to consummate the contract to closing.

In the event this contract is forfeited and we proceed to sale with a subsequent Buyer, we will look to you for all compensatory and consequential damages *** in addition to forfeiture of the earnest money deposit as provided by the contract."

Plaintiffs' attorney also referred defendant to the forfeiture and fee provisions of the contract. On May 1, defendant's attorney sent plaintiffs' attorney a letter which again requested the return of defendant's earnest money.

On May 21, plaintiffs signed a contract to sell their property for $94,950 to Douglas and Juli Alspaugh. On May 22, plaintiffs signed a second contract to purchase Bankes' property, this time for $116,000. Plaintiffs sold their home to the Alspaughs on July 19, 1989.

Plaintiffs filed suit on August 30, 1990. In their complaint, plaintiffs alleged that the 45-day period for defendant to obtain financing expired on April 18. Plaintiffs also alleged that they did not receive notice, prior to April 18, that defendant could not get financing. Defendant refused to go through with the closing on May 10. Because of this alleged breach, plaintiffs incurred the following damages: (1) $3,050 from reduced sales price to a subsequent buyer; (2) $3,000 for additional closing fees and start-up costs; (3) $4,500 for three brood mares that were part of plaintiffs' original purchase contract for the farm in Belvidere; (4) $300 to buy out the Belew contract so that defendant could purchase plaintiffs' property; (5) legal fees incurred on the transaction and interest on those legal fees; (6) $1,000 lost earnest money; (7) $1,484.04 mortgage interest; (8) $900 lost wages for Anna Rogers; and (9) $3,500 settlement amount with Bankes, the seller of the Belvidere farm.

Defendant filed an answer and a counterclaim which sought the return of her earnest money and attorney fees. Plaintiffs answered the counterclaim and alleged, as an affirmative defense, the forfeiture provision of the contract.

Plaintiffs filed a motion for summary judgment on the issue of liability. Plaintiffs argued that defendant did not comply with the notice provision of the contract in that she did not send notice to plaintiffs at their home. Plaintiffs attached to the motion their affidavits in which they each stated that they did not receive, at their home address, notice of defendant's inability to obtain financing. They also averred that they did not consent to any modification of the notice provision of the contract.

Defendant also filed a motion for summary judgment. Defendant argued that, under the terms of the contract, she had 45 days from March 17, 1989, or until May 1, to obtain financing or to give notice. March 17 was the date that plaintiffs notified defendant that they had cancelled the Belew contract. Defendant further argued that plaintiffs had actual notice, prior to May 1, of defendant's failure to obtain financing. According to defendant, the requirement that notice be sent to plaintiffs' home address was not material, and defendant satisfied the notice requirement. Defendant also argued that plaintiffs waived strict compliance with the contractual

notice requirement when they failed to mention the defective notice in their April 28 letter to her. Finally, defendant argued that since plaintiffs were represented by an attorney, she could not communicate directly with them, so that notice to their attorney was notice to them. Defendant also moved for summary judgment on the issue of damages because, according to defendant, plaintiffs were limited to retaining her earnest money deposit. Defendant included a portion of Anna Rogers' deposition testimony, in which she admitted that she saw the termination letter, and she consulted with her attorney about it before her attorney sent the April 28 letter to defendant.

The trial court found that the 45-day period specified in the contract began on March 17, 1989, and expired on May 1, 1989. The court also determined that the notice defendant sent to the realtor and plaintiffs' attorney was not sufficient because it was not sent to plaintiffs' home address. However, the court also found that plaintiffs were aware of the content of defendant's letter when they consulted their attorney prior to April 28. Finally, the court found that plaintiffs did not waive any of the notice requirements of the contract. The court therefore granted plaintiffs summary judgment on the issue of liability and denied defendant's motion.

The cause proceeded to a bench trial. Anna Rogers testified that after the closing did not take place on May 10 plaintiffs put the house back on the market. In May 1989, plaintiffs needed $69,000 to close on the Belvidere property. In July 1989, when they eventually bought the farm, they obtained a $71,000 mortgage to cover the additional start-up costs. After defendant failed to close with plaintiffs, Bankes sued plaintiffs because they were unable to close the sale of the farm. Plaintiffs settled with Bankes for $5,250. The first contract with Bankes included three horses as part of the purchase. The second contract did not include the horses. Anna also testified that she made two mortgage payments on the house between May 10 and July 19, 1989.

Defendant moved for a directed finding. The court granted defendant's motion as to the cost of the horses, $85 for a well and septic report, the money for legal fees and interest on the fees that were incurred in the transaction, and the $3,500 for settlement with Bankes. Plaintiffs' claim for Anna's lost wages was barred by a pretrial order. The court denied the rest of the motion.

Ultimately, the court awarded plaintiffs damages totalling $7,834.04: $3,050 for the reduced sales price of the property, $3,000 for additional closing and start-up costs for the farm, $300 to buy

out the Belew contract, and $1,484.04 for mortgage interest. The court found that defendant did not prove her election of remedies claim because it was not clear that plaintiffs elected to retain the earnest money as a forfeiture. The court also ruled against defendant on the waiver theory. The court reserved the issue of attorney fees.

After a hearing in which plaintiffs submitted records to establish the amount of attorney fees, the court entered an order awarding them $5,000. Defendant filed a post-judgment motion, which was denied. Defendant then timely appealed.

Defendant first contends that the court erred in entering summary judgment for plaintiffs on the issue of liability. A trial court may enter summary judgment when the pleadings, affidavits, and depositions on record show that no genuine issue of material fact exists. (Ill. Rev. Stat. 1991, ch. 110, par. 2—1005.) If the issue turns on a question of law, the court may dispose of the cause on a summary judgment motion. (*Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 421.) When the cause is a breach of contract action, a genuine issue of material fact exists if the writing contains an ambiguity which requires the admission of extrinsic evidence. (*Loyola Academy v. S & S Roof Maintenance, Inc.* (1992), 146 Ill. 2d 263, 272.) (The trial court found, and the parties do not dispute, that the contractual provisions were not ambiguous.) Because the interpretation of a contract is a question of law, we may interpret the contract independently of the trial court's judgment. *Fitzwilliam v. 1220 Iroquois Venture* (1992), 233 Ill. App. 3d 221, 237.

Defendant argues that the trial court erred in finding that she breached the contract by not complying strictly with the notice requirement. Defendant notes that the trial court found that plaintiffs had actual notice before the May 1 deadline. Plaintiffs respond that because defendant did not follow the notice requirement, they did not receive notice. Plaintiffs argue that, under *Thakral v. Mattran* (1987), 156 Ill. App. 3d 849, the notice here was not sufficient. In *Thakral*, the buyers failed to notify the sellers in writing within the time period specified by the contract. The court stated:

> "Here, the sellers did not receive notice of buyers' failure to obtain financing until the day after the time specified for securing a loan commitment. Neither the oral notice provided by the buyers' attorney to sellers' attorney nor the written notice mailed within the time specified has any significance since the contract became binding in the absence of the re-

ceipt of written notification." (*Thakral*, 156 Ill. App. 3d at 854-55.)

The court concluded that the buyers were required to serve notice in compliance with the terms of the contract. *Thakral*, 156 Ill. App. 3d at 856.

■■ While plaintiffs are correct that defendant technically breached the contract by not sending the notice to their home address, equitable principles will prevent a forfeiture of a contract in this situation. Forfeitures are not favored, and a party will be relieved from a technical forfeiture if injustice would result from its enforcement. (*Myers v. Popp Enterprises, Inc.* (1991), 216 Ill. App. 3d 830, 835.) Whether a breach is material, thereby discharging the other party's duty to perform, is an issue to be determined based on the inherent justice of the matter. (*Hickox v. Bell* (1990), 195 Ill. App. 3d 976, 992.) As defendant argues, the purpose of a notice provision is to ensure that the party is informed and the notice was delivered. *Vole, Inc. v. Georgacopoulos* (1989), 181 Ill. App. 3d 1012, 1019.

■ Here, plaintiffs' attorney received written notice within the time period. We note that "[g]enerally, notice to an attorney is notice to the client and knowledge of an attorney is knowledge of, or imputed to, the client notwithstanding whether the attorney has actually communicated such knowledge to the client." (*Foley v. Metropolitan Sanitary District of Greater Chicago* (1991), 213 Ill. App. 3d 344, 351; *In re Marriage of Clarke* (1990), 194 Ill. App. 3d 248, 251.) More importantly, however, plaintiffs were aware of the letter sent to their attorney and of its contents, before the May 1 deadline.

■ The purpose of the notice provision was to assure that plaintiffs received notice that defendant was unable to obtain financing and would not be able to complete the purchase of the real estate from plaintiffs. Since plaintiffs received notice, in writing, prior to the expiration of the specified time, the object of the notice provision was accomplished. (*Myers*, 216 Ill. App. 3d at 836.) We conclude that the failure to send the written notice to plaintiffs' home address was not a material breach of the contract.

Therefore, the trial court erred in entering summary judgment for plaintiffs on the issue of liability. We need not address defendant's remaining appellate contention relating to the issues of damages and attorney fees, since we conclude that defendant was not liable to plaintiffs for breach of contract. Since defendant also moved for summary judgment on the issue of liability based on the

contract, we enter summary judgment in favor of defendant on that issue. We remand the cause to the trial court for further proceedings on defendant's counterclaim.

The judgment of the circuit court is reversed, and the cause is remanded.

Reversed and remanded.

UNVERZAGT and BOWMAN, JJ., concur.