FIRST DIVISION 

December 7, 1998

No. 1-98-1049

THE DENIS F. McKENNA CO.,

Plaintiff-Appellant,

v.

MARY ANN KENNY SMITH, DAVID DREW and DREW HOLDINGS, INC.,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

Appeal from the

Circuit Court of

Cook County.

Honorable

Aaron Jaffe,

Judge Presiding.

JUSTICE TULLY delivered the opinion of the court:

Plaintiff, The Denis F. McKenna Co. (McKenna), filed a complaint against defendants, Mary Ann Kenny Smith, David Drew, and Drew Holdings, Inc. (Drew).  Plaintiff sought a declaratory judgment to enforce an alleged real estate contract between plaintiff and Smith and a preliminary injunction to prevent Smith from selling the property to Drew pursuant to defendants' real estate contract.  Defendants filed a motion for a directed finding.  On March 19, 1998, the trial court granted defendants' motion for a directed finding and denied plaintiff's request for a preliminary injunction.  Plaintiff filed this interlocutory appeal pursuant to Supreme Court Rule 307(a)(1) (155 Ill. 2d R. 307(a)(1)).

For the reasons which follow, we affirm.

FACTUAL BACKGROUND

The record sets forth the following relevant facts.  Defendant Smith owned residential property located at 2600 Blackhawk in Wilmette, Illinois.  Smith placed the property up for sale for $459,000.  On November 18, 1997, at approximately 10:30 a.m., Denis McKenna, president of The Denis F. McKenna Co., made an offer to buy the property through Peg Spengler, his real estate agent.  The offer was for $435,000 and it expired at noon that day.   

When Smith saw the offer at about 11 or 11:30 a.m., she told Mary Jane Kraus, her real estate agent, that she wanted to consult with her attorney, Eugene Callahan, and her brother before entering into a contract.  Just before noon, although Smith still wanted to speak with Callahan, she made a counter-offer which included a new price of $450,000 and was subject to Callahan's approval.  McKenna responded by agreeing to each term of the counter-offer, except for the price.  McKenna then offered $442,500 and imposed a deadline of 2 p.m. that afternoon.  Smith responded that she wanted to speak with Callahan before either accepting or rejecting the offer and requested that McKenna extend the deadline until 3 p.m.  When McKenna was informed of this, he raised his offer to $450,000.  Kraus informed Spengler that Smith was likely to agree to McKenna's offer, but that Smith still wanted to speak with her attorney.  Spengler then asked Kraus for permission to deliver the offer to Smith personally.  Kraus agreed but reiterated that Smith wanted to speak with her attorney before signing any contract. 

At approximately 1:30 p.m., Spengler brought the offer to Smith's home.  The offer expired at 2 p.m. and included an attorney approval clause.  While Spengler waited, Smith continued her attempts to reach Callahan, but was unsuccessful.  Callahan's secretary told Smith that as long as the contract included an attorney approval clause she could sign it because Callahan could reject the offer upon his later review.  Spengler told Smith that there was "no deal" and McKenna "would walk" if she did not sign the contract by 2 p.m.  As a result, Smith signed the contract before reaching Callahan.  Spengler then sent a copy of the contract by facsimile to Callahan's office.

The contract was a standardized real estate contract which is distributed by the North Shore Board of Realtors and widely used in the Chicago area.  It includes a non-negotiation attorney approval clause which states:

"This contract is contingent upon the approval hereof as to form by the attorneys for Purchaser and Seller within 5 business days after Seller's acceptance of this contract.  Notices shall be given pursuant to Paragraph 14 on the reverse side hereof."

The notice provision stated, in pertinent part:

"All notices or other communications which may be required or made under the terms of this Contract shall be in writing and shall be made to the parties hereto at the addresses which appear after their names, or such address or to such person as each may by written notice to the other designate, by personal delivery, certified or registered mail, or by facsimile transmission.

For the purposes of Paragraphs 8 and 9 of this contract, if written notice of disapproval is given within the time period specified, this contract shall be null and void and the earnest money shall be returned to Purchaser." 

On November 18, 1997, Kraus received an offer to buy Smith's property from defendant Drew for $480,000.  On November 19, 1997, Callahan sent written notice by facsimile and first class mail to Spengler that Smith was rejecting the McKenna contract pursuant to the attorney approval clause, and Coldwell Banker returned the $2000 earnest money check that McKenna had submitted.  Spengler immediately faxed Callahan's rejection notice to Marguerite McKenna, McKenna's attorney and Denis' wife.  That same day, Marguerite showed the rejection letter to Denis and recorded the contract at the recorder's office.  She stated that she recorded the contract in order to provide "constructive notice" to subsequent purchasers and creditors.  

Smith accepted the Drew offer on November 25, 1997.  According to Callahan, the Drew contract was not relevant to his rejection of the McKenna contract.  Callahan testified that he specifically objected to paragraph one of the contract, which only gave Smith a maximum of three hours to accept the contract. 

On March 19, 1998, the trial court granted defendants' motion for a directed finding and denied plaintiff's request for a preliminary injunction.  The trial court found that McKenna received actual notice of the rejection, which was sufficient.  Additionally, the court found that Callahan's rejection was in good faith because of the time pressure McKenna and Spengler had placed on Smith.

ISSUES PRESENTED FOR REVIEW

On appeal, plaintiff argues that the trial court erred in granting defendants' motion for a directed finding on the bad faith and notice counts.  Plaintiff also contends that the trial court erred in denying its request for preliminary injunctive relief.  

OPINION

We begin our discussion by addressing plaintiff's contention that the trial court erred in granting defendants' motion for a directed finding on plaintiff's bad faith claim.  At the end of the plaintiff's evidence, the trial court may grant the defendant a directed finding if: (1) as a matter of law the plaintiff has not made a 
prima
 
facie
 case; or (2) after weighing the evidence, the court concludes that the 
prima
 
facie
 case has been negated.  
Kokinis v. Kotrich
, 81 Ill. 2d 151, 407 N.E.2d 43 (1980).  A 
prima
 
facie
 case is one in which the plaintiff has presented at least some evidence on every element essential to his cause of action.  
Kokinis
, 81 Ill. 2d 151, 407 N.E.2d 43.  The trial court's decision on a motion for a directed finding will not be reversed on appeal unless it is contrary to the manifest weight of the evidence.  
Kokinis
, 81 Ill. 2d 151, 407 N.E.2d 43.  A trial judge's finding is against the manifest weight of the evidence if the opposite conclusion is clearly evident.  
Villa v. Crown Cork & Seal Co.
, 202 Ill. App. 3d 1082, 560 N.E.2d 969 (1990).     

If a contract with an attorney approval clause is accepted before an attorney's approval, the acceptance is construed as a qualified or conditional acceptance of the terms of the contract.  
Groshek v. Frainey
, 274 Ill. App. 3d 566, 654 N.E.2d 467 (1995).  The purpose for attorney approval clauses is to provide the purchaser or seller, who is not knowledgeable in real estate matters and who enters into a real estate transaction before his attorney has reviewed the matter, a chance to cancel the contract before final acceptance.  
Olympic Restaurant Corp. v. Bank of Wheaton
, 251 Ill. App. 3d 594, 622 N.E.2d 904 (1993).  "While the review clause must be invoked in good faith, it is not necessary for a party to state a reason when rejecting a contract pursuant to a review clause because the attorney's right to disapprove is a proper exercise of his or her judgment."  
Olympic
, 251 Ill. App. 3d at 600, 622 N.E.2d at 909.  

In the instant case, the evidence does not support a finding of bad faith by Callahan because McKenna and Spengler placed unreasonable time pressures on Smith.  Even though Smith was not apprised of McKenna's original offer until approximately 11 or 11:30 a.m., McKenna required her acceptance by noon.  Just before noon, Smith made a counter-offer and requested a 3 p.m. deadline in order to allow her to speak with Callahan.  McKenna, however, insisted on a 2 p.m. deadline.  As to Spengler, she went to Smith's house and waited, while telling Smith that there was "no deal" and McKenna "would walk" if she did not sign by 2 p.m.  Callahan specifically objected to the form of paragraph one of the contract because the 2 p.m. deadline gave Smith a maximum of three hours to consider the offer.  The trial court observed that Smith "wanted to talk to her lawyer, and I think that [Spengler] came over and really did pressure her.  And I had the feeling that [Spengler] was not the most credible witness that I ever heard.  And I had a problem with the McKennas too with regard to their particular testimony."  Furthermore, Callahan's testimony that the Drew contract was not relevant to his rejection of the McKenna contract provided further evidence of good faith.  Accordingly, the trial court's finding was not against the manifest weight of the evidence and the directed finding was proper.   

Next, McKenna maintains that the trial court erred in finding that actual notice of the rejection was sufficient.  The purpose of a contract's notice provision is to ensure that the notice was delivered and that the party was informed.  
Rogers v. Balsley
, 240 Ill. App. 3d 1005, 608 N.E. 2d 1288 (1993).  Forfeitures of contracts are not favored, and a party will be relieved from a technical forfeiture if an injustice would result.  
Rogers
, 240 Ill. App. 3d 1005, 608 N.E.2d 1288.  The question of whether a breach of contract is material is governed by inherent justice.  
Rogers
, 240 Ill. App. 3d 1005, 608 N.E.2d 1288.   

Here, McKenna received and was informed of the rejection letter on November 19, 1997, the same day it was sent.  The notice provision of the contract stated that notice should be in writing and sent to the addresses which appear after the parties' names on the contract.  McKenna's address, not Spengler's, was listed after his name on the contract.  Although Callahan sent notice to Spengler instead of McKenna, Spengler immediately faxed Callahan's rejection notice to the McKennas.  The trial court found that McKenna received actual notice before the five-day period in the attorney approval clause expired.  Additionally, the trial court noted that the rejection motivated McKenna's attorney to record the contract at the recorder's office.  Applying principles of inherent justice, we find that even though Callahan did not send notice to the address following McKenna's signature on the contract, he did not commit a material breach requiring forfeiture.  Thus, the directed finding was appropriate.

Plaintiff's final argument is that the trial court erred in refusing to grant its request for preliminary injunctive relief.  However, since we have already determined that the trial court did not err in granting defendants' motion for a directed finding, we need not address this issue.  

For the foregoing reasons, we affirm the judgment of the trial court.

Affirmed.

O'BRIEN, P.J., and GALLAGHER, J., concurring.