SECOND DIVISION

May 7, 2002

No. 1-00-1291

MICHAEL D. KLEIN, 

Plaintiff-Appellee and Cross-Appellant,

v.

CAREMARK INTERNATIONAL, INC.,

Defendant-Appellant and Cross- Appellee.
 

)))))))))))

Appeal from the

Circuit Court of

Cook County

96 L 13206

Honorable

James F. Henry,

Judge Presiding.

JUSTICE McBRIDE delivered the opinion of the court:

This appeal arises out of the termination of employee Michael Klein, plaintiff-appellee and cross-appellant from Caremark International, Inc. (Caremark or the Company), defendant-appellant and cross-appellee.  On November  27, 1995, Klein and Caremark entered into a severance compensation agreement (Agreement).  The Agreement provided Klein, who at the time was regarded as a key executive by Caremark, certain severance benefits in the event of a termination of Klein's employment.  The Agreement also provided that Klein could be terminated by Caremark in the event the board of directors of the Company determined that he was no longer a key executive and gave him notice of such determination.  On July 12, 1996, Klein was terminated at a meeting held by Caremark management.

Klein filed a complaint alleging that Caremark materially breached the Agreement by terminating him while the Agreement was still in effect.  Klein further alleged that he was entitled to the severance benefits provided under paragraph 5(A) of the Agreement.  Both sides filed cross-motions for summary judgment on several issues including whether the Agreement had been materially breached and whether Klein was entitled to severance benefits.  Several months before the trial court ruled on the parties' cross-motions for summary judgment, the parties stipulated that if liability were found, Klein's damages would be $756,556. 
  On March 15, 2000, the trial court found that Klein's termination was a material breach of the Agreement and that he was entitled to severance benefits in the amount of $756,556.  The court further granted  Klein's motion for legal fees in the amount of $182,474.75 based on paragraph 5(B)(iv) of the Agreement.  Klein also made motions for supplemental attorney fees, for prejudgment interest, and for attorney fees incurred in prosecuting an appeal.  The trial court denied these motions.

Caremark appeals the trial court's summary judgment ruling in favor of Klein.  Klein cross-appeals the trial court's denial of his motions for supplemental attorney fees, prejudgment interest, and attorney fees in connection with prosecuting an appeal.

Eight issues are raised on review.  First, w
hether the trial court properly granted summary judgment in favor of Klein on the basis that Caremark materially breached the Agreement.  Second, whether the trial court correctly ruled the Agreement provided Klein a fixed term of employment.  Third, w
hether Caremark's post termination actions cured Caremark's material breach of the Agreement.  Fourth, whether Klein was entitled to damages equal to the severance pay scheme set forth in the Agreement.
  
Fifth,
 
whether the trial court abused its discretion by awarding attorney fees to Klein based on the hourly rates of his attorneys.  Sixth, w
hether the trial court properly denied Klein's motion for pre judgment interest.  Seventh, whether the trial court incorrectly denied Klein's supplemental submission in support of legal fees.  Eighth, whether the trial court properly denied Klein's motion for attorney fees incurred in prosecuting an appeal.  The fifth, sixth, seventh, and eighth issue are discussed in the non-published portion of this opinion.  We state the following background facts.

 On November 12, 1996, Michael Klein filed a complaint against his former employer Caremark.  Caremark is a public "spinoff" of a division of Baxter Laboratories, which conducts business in the health care industry.  Klein held a management position at Baxter Laboratories and then accepted a position at Caremark upon its creation by Baxter in 1992.  

On July 13, 1992, Klein and Caremark executed an employment agreement which expressly stated that Klein was an at-will employee.  On November 27, 1995, Klein and Caremark entered into the Agreement at issue, which was a severance compensation agreement designed to provide incentives and benefits to Klein and other personnel deemed by Caremark to be superior managers.  On May 1, 1996, certain terms of the Agreement were amended including a provision concerning a change of control over the Company.  Klein and Caremark executed both the Agreement and the amendment.  Due to allegedly poor business performance by Klein, Caremark sought to terminate his employment.

Paragraph 1 of the Agreement stated that Caremark would continue to employ Klein as an executive for a specific term.  Paragraph 2 of the Agreement provided that the term "shall be one year commencing on December 1, 1995 and ending on November 30, 1996 and shall automatically renew for successive one year periods."  Paragraph 2 further set forth that the Agreement would automatically end upon the occurrence of any of the following events:

"(i) [Klein gave] notice to the Company that [he] wished to terminate this Agreement not less than 90 days after [his] notice was given;

(ii) [Klein died] or [received] a Notice of Termination due to Disability;

(iii) [Klein reached his] Retirement Date; or

(iv) The Board of Directors of the Company [determined] that [Klein] was no longer a key executive and [gave Klein] notice of this determination except that such determination shall not be made, and if made, shall have no effect, after a Change in Control."

A "Change in Control"  is defined in the amendment to the Agreement as "the acquisition by any individual, entity or group *** of 20% or more of *** the then outstanding shares of common stock of the Company."

In paragraph 5(A), the Agreement provided that, in the event of Klein's termination for any reason except those set forth in Paragraph 2 (A)(i)(notice that employee wishes to terminate the Agreement),(ii)(employee dies or receives a notice of termination due to disability), or (iii)(employee reaches the date of retirement), Caremark shall pay Klein his full base salary through the date of termination, three times the sum of his annual base salary, and an amount equal to all awards or units of participation awarded but not paid.  Paragraph 5(B)(iv) set forth that, in the event of Klein's termination, Caremark, "shall pay all legal fees and expenses incurred by [Klein] as a result of [his] Termination (including all such fees and expenses, if any, incurred in contesting or disputing [his] Termination or in seeking to obtain or enforce any right or benefit provided by the Agreement)." 

In his deposition, Klein testified that, on July 12, 1996, he was instructed to attend a meeting with his superior, Diane Munson, and Kent DeLucenay, vice president of human resources at Caremark.  Munson and DeLucenay testified that Klein was informed that he was going to be terminated.  Klein confirmed in an affidavit that he was informed at the July 12, 1996, meeting that he was being terminated effective August 6, 1996.  According to Munson
, the basis for Klein's termination was his performance in executing the Pacificare contract, which adversely impacted Caremark's medical clinic in Oklahoma City.  Klein stated in an affidavit that after July 12, 1996, except for a brief visit to Caremark's facility to retrieve his personal belongings, he did not return to work for any purpose.  On July 15, 1996, Caremark mailed a "Employment Termination and General Release Agreement" to Klein.  The letter explained that his employment would be terminated effective August 6, 1996, in consideration for separation pay in the amount of $166,400 in addition to $14,080 for accrued and unused vacation time.  The last paragraph of the letter stated the following: "If you agree to the terms outlined in the agreement, then please sign two copies and return one of them to me by August 6, 1996.  Otherwise, I will assume that you rejected this agreement." 

The record indicates that Klein and DeLucenay spoke via telephone on August 8, 1996.  In that conversation, Klein rejected the employment termination and release agreement proposed by Caremark.  On August 9, 1996, Klein sent a letter to DeLucenay, which, among other things, informed DeLucenay that he would not agree to the severance agreement noted above.  

On August 15, 1996, Klein was sent a letter from human resources at Caremark informing him that, upon termination, his life insurance coverage would stop.  The record reveals that on or about August 21, 1996, Caremark's board of directors determined that Klein was no longer a key executive.  On August 22, 1996, Klein's counsel received a letter from Diane Nobles, an attorney  and vice president of ethics and integrity at Caremark.  The letter stated the following, in pertinent part:

"For performance-related reasons that I alluded to in our conversation and which I will not detail here, the Board of Directors at Caremark has been asked to determine that Mr. Klein is no longer a 'key executive' within the meaning of his Agreement.  The formal resolution requesting that the Board take this step was mailed yesterday.

*** Regardless of whether a contract in fact exists, it is our position that the Board of Directors of Caremark retains the unfettered right to determine that an employee is no longer a key executive at any time prior to Change of Control of the Company.  Notwithstanding this argument, we have decided to remedy what should be perceived by any reasonable person as a mere 'technicality' or a simple administrative foul-up.  Accordingly, we are reinstating Mr. Klein and he will remain employed by Caremark until August 31, 1996, which will now become the effective date of the termination of his at-will employment.

In our discussions, you have implied that your client somehow is entitled to three (3) years of compensation under his Agreement.   Since there has not been a Change of Control of the Company as defined by the Agreement, you are on notice that under no circumstances will Caremark pay your client any monies pursuant to that provision in his Agreement." 

On August 28, 1996, Nobles sent Klein a letter.  The letter  informed Klein that Caremark had recently advised his counsel of its intent to revise Klein's termination date to August 31, 1996.  Further, a check to Klein in the amount of $8,320 was enclosed,  which represented his full gross salary from August 7, 1996, to August 23, 1996.  The letter also indicted that a check for the pay period between August 26, 1996, and August 31, 1996, was forthcoming in addition to a check for all unused and accrued vacation time.   

On August 30, 1996, Klein's counsel responded to this letter by stating that, "[n]either Mr. Klein nor I ever solicited or agreed to such reinstatement, and we reject your apparent contention that Caremark can rehire or reinstate a former employee unilaterally and against his will."  On the same day, Klein sent a letter to Nobles which stated that he rejected reinstatement by the Company and that he was returning the retroactive paycheck that had been sent to him by Caremark.  The record reveals that Klein returned the check for $8,320, and subsequent checks sent to him by Caremark on September 9, 1996, and October 6, 1996.   

In his complaint, Klein claimed that Caremark materially breached the Agreement by terminating him while the Agreement was still in effect.  The complaint further alleged that on September 5, 1996, Caremark merged with the subsidiary of MedParters/Mulliken, Inc.  This merger constituted a "Change in Control" under the agreement according to Klein.  Thus, Klein claimed that he was entitled to certain benefits under the paragraph 5(A) Agreement which amounted to $835,000 plus payment of his legal fees and expenses.   
 

In its brief, Caremark alleges that it decided to terminate Klein based on his lack of business judgment in connection with a managed care contract Klein had executed on Caremark's behalf with Pacificare.  Caremark further claims that, in an effort to spare Klein the embarrassment of a "for cause" termination, the Company offered Klein the option of executing a mutual agreement which would terminate his employment in exchange for a payment of $166,400 which amounted to his annual salary, other benefits, and a release of all claims.  Caremark contends that Klein was advised to consult with an attorney and respond to the proposal by August 6, 1996.  Caremark further claims that the Company prepared Klein's termination papers in advance and marked them with a note which stated, "SEV SET UP BUT HOLD," "KEY MONDAY 8/5 EFF 8/6."  Assuming Klein accepted the offer, Caremark asserts that these termination papers were set to be processed.

As noted above, the record reveals that Klein rejected this offer in a telephone conversation with DeLucenay on August 8, 1996.  Caremark claims that because Klein's rejection was not communicated to the Company prior to August 5, 1996, the human resources coordinator made an inadvertent "clerical error" and processed the termination paperwork.

Attorneys for Klein then notified the Company that he was demanding benefits under the Agreement because he had been terminated on August 6, 1996, prior to a finding by the Board that he was no longer a key executive.  As we observed above, the Agreement provided that it would automatically  terminate in the event that the board of directors determined that Klein was no longer a key executive and gave him notice of that determination.  The term of Klein's employment extended to November 30, 1996, under the Agreement.  The record also indicates that a "Change of Control" occurred on September 5, 1996, when Caremark merged with MedPartners/Mullikan, Inc.  Thus, Klein claims that he was terminated prior to any determination by the Caremark board that he was no longer a key executive and notice thereof.  According to Klein, such action was a material breach of the Agreement.   

Caremark contends that, "in an abundance of caution," Caremark reinstated Klein until August 31, 1996, to remedy what was "at most" an administrative foul-up that led to the premature processing of Klein's termination.  Caremark further contends that the determination that Klein was no longer a key executive was fully executed on or before August 30, 1996, and that Klein's employment termination and cancellation of the Agreement occurred prior to the change of control over the Company on September 5, 1996.

The parties filed cross-motions for summary judgment which, among other things, sought a finding that Klein either was or was not entitled to benefits under Paragraph 5 of the Agreement.  In a preliminary order on October 15, 1999, the trial court ruled in favor of Klein on the grounds that the Agreement, "created a fixed-term of employment of one year, and that Caremark's "termination of [Klein] constitute[d] a material breach of Paragraph 2 of the *** Agreement."

On March 15, 2000, the trial court entered a final order that affirmed Klein's entitlement to severance benefits under the Agreement in the amount of $756,556.  The court further granted Klein's motion for legal fees and expenses pursuant to paragraph 5(B)(iv) of the agreement.  Specifically, the court awarded Klein attorney fees "(at 100% of the standard hourly rates through October 15, 1999) and expenses in the total amount of $182,474.75."

On December 6, 1999, plaintiff filed a supplemental motion for attorney fees in the amount of $12,368 incurred by Klein for his counsel's "preparation of the extensive and detailed fee petition."  The trial court denied Klein's supplemental motion for attorney fees in its order of March 15, 2000.  The trial court also denied Klein's motion for statutory prejudgment interest and motion for prejudgment interest under the Agreement.  Finally, the trial court denied Klein's request for attorney fees and expenses incurred in prosecuting an appeal.  Caremark appeals the summary judgment ruling and Klein cross-appeals the trial court's denial of his motions for prejudgment interest
, supplemental motion for attorney fees,
 and motion for attorney fees incurred in prosecuting an appeal.
 

We first consider whether the trial court properly granted summary judgment in favor of Klein on the basis that Caremark materially breached the Agreement.  On reviewing a motion for summary judgment, our standard of review is 
de
 
novo
.  
Ragan v. Columbia Mutual Insurance Co.
, 183 Ill. 2d 342, 349, 701 N.E.2d 493 (1998).  Summary judgment is proper where the pleadings, depositions, and admissions on file, together with the affidavits, if any, "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  
Jones v. Chicago HMO Ltd. of Illinois
, 191 Ill. 2d 278, 291, 730 N.E.2d 1119 (2000).

In its reply brief, Caremark raises four genuine issues of material fact in support of its position that summary judgment should not have been granted in Klein's favor: (1) Klein's "catastrophic" performance in negotiating the Pacificare contract; (2) whether Klein's termination on August 6, 1996, was the result of a clerical error; (3) whether Caremark materially breached the Agreement; and (4) whether the breach, if any, was cured by Caremark.  

We find the first question is not relevant to whether Caremark breached the Agreement because Caremark's reasons for terminating Klein have nothing to do with the question of whether he was terminated pursuant to the provisions in the Agreement.  Likewise, the fact that Klein was terminated on August 6, 1996, due to an alleged clerical error by Caremark is not relevant to whether he was properly terminated under the  Agreement.  Our primary function in reviewing the summary judgment question is whether there is any genuine issue of material fact that Caremark materially breached the Agreement.  We will also fully address the question of whether Caremark cured the breach in our discussion of the third question on appeal.   

Having reviewed the record 
de
 
novo
, we conclude that Caremark breached the Agreement by terminating Klein prior to a determination by the Company's board of directors that he was no longer a key executive.  Further, there is no question that the breach was material because Caremark deprived him of the severance benefits he was entitled to in the event that he was terminated outside of the terms of the Agreement.  Here, Klein was not terminated in accordance with the procedure established in paragraph 2(A)(iv) of the Agreement.  In an attempt to correct the error, the record demonstrates that Caremark unilaterally reinstated Klein until the board of directors could determine that he was no longer a key executive under paragraph 2(A)(iv).  Klein, however, rejected such reinstatement.  The Agreement was effective until November 30, 1996, under paragraph 2(A).  Thus, the Agreement between Klein and the Company was enforceable until November 30, 1996.  Until that term expired, and prior to a change in control, Caremark could, within the terms of the Agreement, only terminate Klein by having its board of directors determine that he was no longer a key executive and by providing him notice thereof.  Caremark failed to follow the Agreement and by doing so materially breached its terms. 

The evidence proffered by Caremark does not raise a question of fact that Caremark materially breached the Agreement.  In essence, Caremark claims that Klein's termination by the Caremark management on August 6, 1996, was inadvertent or the result of an administrative error.  In the alternative, Caremark attempts to demonstrate that it complied with the terms of the Agreement by securing Klein's termination by the board of directors on August 21, 1996.  

One stated purpose of the Agreement was to confer special severance benefits to Caremark's "vital management group."  One other purpose of the Agreement was to give Klein certain benefits in the event of a  termination.  In our view, Klein's termination by Caremark management was a material breach of the Agreement because the termination occurred before the board of directors decided that he was no longer a key executive.

Further, paragraph 2(A)(iv)required that Klein be notified of the board's determination that he was no longer a key executive.  Although disputed by Caremark, the record reveals that Klein was never actually notified by the Caremark board that he was no longer a key executive.  The record demonstrates that Klein was first notified of Caremark's formal request to the Caremark board seeking a determination that he was no longer a key executive in Nobles' letter dated August 22, 1996.  We note that at time the letter was dated, it was uncertain whether the Caremark board had even made a determination that Klein was no longer a key executive.  The letter indicates that Caremark was requesting that the board of directors take this step.  Further, this notice, which did not even originate from the Caremark board, was dated 16 days after Klein was terminated by Caremark management.  Caremark's failure to provide Klein with notice from the board of directors indicating a determination that he was no longer a key executive amounted to a material breach of paragraph 2(A)(iv) of the Agreement.  Even if Klein received notice from the board, there is no question that Klein's termination occurred before the board's decision was effectuated.  From our review of the entire record, we conclude that Caremark materially breached the Agreement and that the trial court did not err in granting summary judgment in favor of Klein.

We next address whether the trial court correctly ruled that the Agreement provided Klein with a fixed term of employment.  Construction of a contract is a question of law that is reviewed 
de
 
novo
.  
Amalgamated Bank of Chicago v. Kalmus & Associates, Inc.
, 318 Ill. App. 3d 648, 655, 741 N.E.2d 1078 (2000)

Caremark argues that Klein has failed to prove a material breach of paragraph 2 of the Agreement as a matter of law on the ground that Klein was not employed for a fixed term under the Agreement.  Caremark suggests that the Agreement's term is not fixed because the board of directors could terminate him at any time under paragraph 2(A)(iv).  We note, however, that the Agreement expressly provides a term of December 1, 1995, to November 30, 1996.  While we agree that Klein could have been terminated during that period, the salient question in this case is whether Caremark followed the procedure set forth in paragraph 2(A)(iv) for doing so.  We are not persuaded by Caremark's claim that because the Agreement was subject to termination at any time, the termination here was not a material breach. 

Caremark also claims that Klein's contract was not for a fixed term because he could be terminated at-will under his original employment agreement.  The fact that Klein's original employment agreement was an at-will employment contact does not impact the validity of the Agreement in this case.  In effect, the Agreement trumps Klein's at-will employment status because the Agreement's terms are sufficiently definite.  "Employment contracts in Illinois are presumed to be at-will and are terminable by either party; this rule, of course, is one of construction which may be overcome by showing that the parties agreed otherwise."  
McInerney v. Charter Golf, Inc.
, 176 Ill. 2d 482, 485, 680 N.E.2d 1347 (1997).  Here, the Agreement was a contract because there was an offer, acceptance, and sufficiently definite terms between the parties.  
Academy Chicago Publishers v. Cheever
, 144 Ill. 2d 24, 29, 578 N.E.2d 981 (1991); 
Hirsch v. Feuer
, 299 Ill. App. 3d. 1076, 1081-82, 702 N.E.2d 265 (1998).  The language in paragraph 1 of the Agreement provided, "[e]xcept as specifically changed by this Agreement all terms and conditions of your current Employment Agreement with the Company shall remain in full force and effect." Immediately following this language in paragraph 2, the Agreement provided that the term of employment "shall be the one year period commencing on December 1, 1995 and ending on November 30, 1996."  Therefore, contrary to Caremark's claim, the Agreement was for a fixed term. 

Caremark relies upon 
Ridgeview Construction Co. v. American National Bank & Co. of Chicago
, 205 Ill. App. 3d 1045, 1051, 563 N.E.2d 986 (1990), and 
In re Estate of Szorek
, 194 Ill. App. 3d 750, 756, 551 N.E.2d 697 (1990), for the proposition that the Agreement incorporated the terms of Klein's employment agreement including the at-will provision.  Thus, according to Caremark, the at-will provision was part of the Agreement and Klein could be terminated at Caremark's will.  These cases, however, do not support Caremark's claim because they do not involve employment contracts or at-will employment.

Caremark also relies upon 
Bishop v. Lakeland Animal Hospital, P.C.
, 268 Ill. App. 3d 114, 117, 644 N.E.2d 33 (1994).  In 
Bishop
, the appellate court held that the trial court did not err in dismissing count II of Bishop's complaint on the basis that her employment contract as a doctor of veterinary medicine with Lakeland Hospital was not a fixed term contract.  The employment contract stated that Bishop would be employed on July 1, 1992, for a term of one year, "
or until employment was terminated under Paragraph 7
." (Emphasis added).  
Bishop
, 268 Ill. App. 3d at 117.   Paragraph 7 allowed either party to terminate the contract with or without cause.  The appellate court found that the plain language of the contract demonstrated that both parties anticipated the possibility of early termination without cause.  Since Bishop was given the requisite 60 days notice, the appellate court found that the trial court did not err in dismissing this count from her complaint.  
Bishop
, 268 Ill. App. 3d at 117.

Bishop
 is distinguishable from this case because the term provision expressly anticipated an early termination as set forth in paragraph 7 of that agreement.  While we agree that the Caremark Board could have terminated Klein at any time upon a determination that he was not a key executive, the board failed to do so prior to Klein's termination by Caremark management.  Therefore, the contract in 
Bishop
 is distinguishable from the Agreement in the instant case.

Based on the above discussion and the language of the Agreement quoted above, we conclude that the trial court correctly ruled that the Agreement provided Klein a fixed term of employment
. 

We next consider whether Caremark's post termination actions cured Caremark's material breach of the Agreement.  
Caremark claims that the breach was 
de
 
minimis
 and not material because the Company took corrective action by reinstating Klein prior to the change of control on September 5, 1996.  Thus, according to Caremark, time existed for the board of directors to make the requisite determination prior to the change in control, and the breach, if any, was immaterial.  In support of its position, Caremark relies upon 
Pacini v. Regopoulos
, 281 Ill. App. 3d 274, 279, 665 N.E.2d 493 (1996), 
Rogers v. Balsley
, 240 Ill. App. 3d 1005, 1011, 608 N.E.2d 1288 (1993), 
Intervisual Communications, Inc. v. Volkert
, 975 F. Supp. 1092 (N.D. Ill. 1997), and the Restatement of Contracts (Second) §241 (1981).

Neither the authority relied upon by Caremark nor the Restatement alters our conclusion that Klein's termination by Caremark management was a material breach of the Agreement.  
Pacini
 established the principle of 
de
 
minimis
 
non
 
curat
 
lex
, which means that if a party's failure to perform causes only slight harm, there has been no breach of duty.  
Pacini
, 281 Ill. App. 3d at 279.  Here, the harm suffered by Klein was not slight because he was terminated by Caremark outside the procedure for termination set forth in paragraph 2(A)(iv) of the Agreement.  As a result, Klein lost a benefit of the Agreement, which was to protect him from termination by anyone other than the Caremark board of directors and to provide him significant severance benefits in the event of a failure to follow the termination procedure outlined in the Agreement.

We observe that 
Intervisual Communications
, a federal district court case, stands for the proposition that a breach is only material when the contract would not have been made without the requisite performance.  
Intervisual Communications
, 975 F. Supp. at 1100.  In 
Rogers
, cited above, the appellate court stated that "[w]hether a breach is material, thereby discharging the other party's duty to perform, is an issue to be determined based on the inherent justice of the matter."  
Rogers
, 240 Ill. App. 3d at 1011.  In addition to section 241 of the Restatement (Second) of Contracts, set forth above in relevant part,
 Caremark cites 
Intervisual Communications
 and 
Rogers
 for the proposition that it would be inequitable to confer the benefits of the Agreement to Klein on the basis of a clerical error. 

Contrary to Caremark's claim, the record shows that Klein was not terminated because of a clerical error, but because Caremark management (and not the board) decided that he would be terminated.  It is undisputed that on July 12, 1996, Caremark management informed Klein that his termination was effective August 6, 1996.  It is also undisputed that at no time before August 6, 1996, did the board determine that Klein was no longer a key executive.  Caremark cannot escape the fact that it failed to follow the procedure established in paragraph 2(A)(iv) of its own Agreement, requiring a determination by the board of directors that Klein was no longer a key executive and providing him notice thereof. 

Next, Caremark claims that the fact that Klein's attorneys would not accept his reinstatement does not entitle him to summary judgment.  Rather, by reinstating Klein, Caremark claims that it cured any breach that may have existed.  Caremark cites no controlling authority for this premise, but relies upon 
Arrow Master, Inc. v. Unique Forming, Ltd.
, 12 F.3d 709 (7th
 Cir. 1993).  A reading of the 
Arrow Master
, a Seventh Circuit case, reveals that the principle of curing an alleged breach of contract is not even discussed.  Accordingly, this argument is waived under Supreme Court Rule 341(e)(7), which requires an appellant to provide citations to relevant authority supporting arguments advanced on appeal.  177 Ill. 2d R. 341(e)(7); 
McCarthy v. Denkovski
, 301 Ill. App. 3d 69, 74, 703 N.E.2d 408 (1998).  Specifically, " '[a] reviewing court is entitled to have issues clearly defined with pertinent authority cited and coherent arguments presented; arguments inadequately presented on appeal are waived.'" 
Denkovski
, 301 Ill. App. 3d at 75.  We therefore reject the argument on the basis of waiver.  

Caremark also claims that the Company timely terminated Klein under paragraph 2(A)(iv) of the Agreement.  According to Caremark, under a golden-parachute-type agreement, a plaintiff cannot assert a breach if his right to benefits is contingent on a change in control and such right is extinguished prior to the change in control.  In support of the argument, Caremark relies on 
Palda v. General Dynamics Corp.
, 47 F.3d 872, 874-75 (7th
 Cir. 1995), and 
Wilde v. First Federal Savings & Loan Ass'n of Wilmette
, 134 Ill. App. 3d 722, 730-31, 480 N.E.2d 1236 (1985). 

First, we note that 
Palda
 does not stand for the proposition that Caremark suggests it does.  In fact, Caremark's characterization of the case is somewhat misleading.  
Palda
, while possessing similar facts, dealt with the issue of whether the federal district court erred in dismissing both counts of Palda's first amended complaint.  The Seventh Circuit found that the district court had properly dismissed the complaint because plaintiff failed to state a claim for breach of contract based on the definition of a change of control 
in that agreement
.  
Palda
, 47 F.3d at 874.

Wilde
 is similarly unpersuasive.  While it is factually similar to the instant case, 
Wilde
 also involved the dismissal of a complaint.  The appellate court held that the trial court properly dismissed the complaint because the plaintiff's employment contract, which conferred severance benefits, had expired by operation of law.  Under the facts in that case, the board had to approve employment contracts of the type relied upon by plaintiff.  Defendant's affidavit in 
Wilde
 averred that the contract had never been approved by the board.  As a result, the appellate court held the contract expired by operation of law and found that the trial court had not erred by dismissing the complaint.  
Wilde
, 134 Ill. App. 3d at 730-31.  Thus, we determine that Caremark's authority for the proposition that it properly terminated Klein under paragraph 2(A)(iv) is unpersuasive.

We now address whether Klein was entitled to the damages enumerated in paragraph 5(A) of the Agreement.  Caremark claims that even if a material breach of paragraph 2 of the Agreement occurred, the trial court improperly held that Klein was entitled to the post-change-in-control benefits established under paragraph 5(A).  

Caremark suggests that Klein is entitled to at most three weeks' back pay from August 6, 1996, to August 31, 1996, his revised termination date.  Caremark again claims that Klein's entitlement to post-change-in-control severance was not vested because he was terminated by the board of directors prior to the change in control which occurred on September 5, 1996.  Caremark refers to paragraph 4 of the Agreement as a "dual-trigger" requirement where benefits are not conferred unless two conditions are met: first, a change in control; and second, a subsequent termination.  Caremark also contends that we must acknowledge the Agreement's limitation language set forth in paragraph 6, which states that "[t]his Agreement shall have no effect on any termination of your employment prior to a Change in Control."    First, we determine that paragraph 4 of the Agreement is not applicable because it pertains to circumstances involving a termination following a change in control.  Here, the record reveals that Klein was terminated by Caremark management on July 12, 1996, before a change in control.  Second, this termination did not follow the procedure set forth in paragraph 2(A)(iv), which required the board to determine that Klein was not a key executive and to provide him with notice of that determination.  On August 22, 1996, Caremark attempted to reinstate Klein until August 31, 1996.  Klein rejected this reinstatement.  As pointed out above, the change of control occurred on September 5, 1996.  Under these facts, paragraph 4 of the Agreement is not applicable because it governs a termination that occurs after a change in control.

Further, we note that paragraph 5(A) states that, "[i]n the event of your termination for 
any reason
 except those set forth in paragraphs 2(A)(i), (ii) and (iii), the Company shall pay you *** Severance Pay." (Emphasis added.)  This language expressly provided that Klein would get the severance benefits set forth in paragraphs 5(A)(i), (A)(ii), and (A)(iii) in the event that he was terminated for any reason.  We agree with the trial court that the benefits conferred in paragraph 5 were not limited to situations where Klein was terminated after a change of control.  

We also reject Caremark's suggestion that paragraph 6 of the Agreement, quoted above, confirmed that the benefits under paragraph 5 would not be paid out for a termination prior to a change of control under any circumstances.  We agree with Klein that paragraph 6 must be read in conjunction with the other provisions in the Agreement.  "A contract is to be construed as a whole, giving meaning and effect to every portion thereof, if possible, and not resorting to detached portions thereof standing alone."  
Coles-Moultrie Electric Cooperative v. City of Sullivan
, 304 Ill. App. 3d 153, 159, 709 N.E.2d 249 (1999).  As we noted above, at least one purpose of the Agreement was to provide Klein with certain protection from termination outside of the procedure set forth in paragraph 2(A)(iv).  Another purpose of the Agreement was to afford Klein protection from the at-will employment status established in his original employment agreement.  Paragraph 5(A) stated that Klein would get the severance benefits under the Agreement if he were terminated for any reason, except if he wanted to terminate the Agreement, became disabled or died, or reached his retirement date.  None of these exceptions apply.  We have already concluded that the severance benefits provided for in paragraph 5 were not only triggered by a change in control.

Moreover, paragraph 6, when carefully read, simply reiterates the three conditions under which the benefits would not be paid: voluntary resignation, death or disability, or Klein's retirement.  It does not take away termination benefits for "any reason" except for voluntary resignation, death or disability, or retirement.  As noted above, paragraph 6 provides that in the event of a termination prior to a change in control, Klein "shall receive *** those benefits to which [he] would have become entitled prior to a change in control."  Because his termination occurred without the board's decision, he became entitled to the benefits set forth in paragraph 5(A). 

After reading the provisions of the Agreement together, we simply do not agree with Caremark that the language in paragraph 6 confirms that benefits under paragraph 5 would be paid for a termination only after a change in control.  Such an interpretation of paragraph 6 would frustrate the entire purpose of the Agreement and would leave Klein in no better a position than he was under his original at-will employment agreement.  
Thus, we reject Caremark's claim that Klein was not entitled to the severance benefits under paragraph 5(A). 

Finally, Caremark claims that the trial court's ruling was inconsistent with the purpose of the Agreement and confers a "windfall" to Klein, in essence, rewarding a sub standard employee with severance benefits based on a clerical error.  As noted above, we find that awarding Klein severance benefits under these facts was appropriate.  Such a result was clearly envisioned by the parties as evidenced by the formation of the Agreement.  Unfortunately for Caremark, Klein became, in its own words, an incompetent employee.  However, once the Agreement had been signed, Caremark was obliged by its terms, specifically paragraph 2(A)(iv), to terminate Klein via a determination by the board of directors that he was no longer a key executive and to provide him with notice of that determination.  Caremark failed to follow this procedure.  Therefore, we agree with the trial court that, because Caremark materially breached the Agreement, Klein was entitled to severance benefits under paragraph 5(A).  

[Non-publishable material under Supreme Court Rule 23 removed here.]
 

For the reasons set forth above, the order of March 15, 2000, granting summary judgment is affirmed; the award of attorney fees is reversed and that portion of the order is remanded
 for a hearing to determine the reasonableness of those fees; the order denying prejudgment interest is affirmed; the order denying supplemental attorney fees is reversed and that portion of the order is remanded for a hearing to determine the reasonableness of those supplemental fees; the order denying fees for prosecuting this appeal is also reversed and remanded for a further hearing upon the filing of a petition for attorney fees. 

Affirmed in part and reversed in part; cause remanded with directions.

BURKE, P.J., and CAHILL, J., concur.