**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1969
_____

LEE ARGUSH,
                        Appellant

v.

LPL FINANCIAL, LLC;
ANDREW PUTTERMAN;
FORTIGENT LLC; LPL HOLDINGS INC.


_____

On Appeal from the United States District Court
for the District of New Jersey
(D. N.J. Civ. No. 3-13-cv-07821)
District Judge: Hon. Anne E. Thompson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
July 10, 2018

Before: McKEE, VANASKIE, and SILER,[*] *Circuit Judges*

(Filed: December 28, 2018)


_____

OPINION[**]
_____

---

[*] The Honorable Eugene E. Siler, Jr., Circuit Judge, United States Court of Appeals for the Sixth Circuit, sitting by designation.
[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SILER**, *Circuit Judge*

In this employment contract dispute, plaintiff Lee Argush appeals two pretrial decisions of the district court that preceded a jury verdict in favor of defendants LPL Financial, LLC and LPL Holding, Inc. (collectively, "LPL"). Specifically, Argush appeals the district court's order granting LPL's motions in limine that precluded Argush from presenting evidence related to: (1) LPL's planning and motive for Argush's termination, and (2) circumstances surrounding LPL's termination of Argush's business partners, Alan Gavornik and Nicholas Mariniello. Argush also appeals the district court's decision striking portions of his expert report on front-pay damages. For the reasons stated herein, we will affirm.

## I.

Argush became an employee of LPL in 2011 when it acquired Concord Capital Partners ("Concord"), a technology company. Prior to this acquisition, Argush was CEO and partial owner of Concord. Argush had been responsible for "ensuring Concord's technology functioned properly on a day to day basis."

Upon LPL's purchase of Concord, LPL and Argush entered into a written employment agreement, supplemented by a stock purchase agreement (collectively, "the agreement"). Under the agreement's terms, Argush was considered an at-will employee. If LPL terminated Argush without "cause" he would be eligible to receive certain severance benefits and would have the opportunity to exercise vested stock options. If

LPL terminated Argush's employment with cause, however, he would be ineligible for severance and would be unable to exercise stock options. Argush's contract defined "cause" as: "willful malfeasance, willful misconduct or gross negligence in connection with [Argush's] duties or an act or omission which is injurious to the financial condition or business reputation of LPL."

Pursuant to his employment agreement, Argush continued to supervise the Concord offices. The following year, LPL acquired another company similar to Concord and began integrating the two companies. Argush expressed concern and refused to cooperate with the integration. For example, Argush failed to submit requested information and interfered with LPL's access to employees in the Concord offices. In April 2013, Argush, Gavornik, and Mariniello brought suit against LPL. They alleged that LPL had diverted resources away from Concord, thereby harming their opportunity to receive additional compensation under their employment agreements.

Shortly thereafter, on July 30, 2013, LPL instructed Argush and his partners to begin working remotely. LPL stated that Argush's "continued presence in the Concord offices [would] create unnecessary difficulties as LPL Financial [sought] to implement its business strategy." Argush's work-remotely arrangement provided that he must seek permission at least twenty-four hours before coming into the office.[1]

---

[1] Argush claims that he was initially told that he could come into the office until remote access to the network was set up on his personal computer, but LPL officials deny the existence of this arrangement.

On July 31, Argush emailed LPL executives and informed them of his "intent to continue to report to the office." LPL responded that it stood by its decision and expected Argush to work remotely. Executives reiterated that he should only report to the office under special circumstances, after giving notice. Argush ignored these instructions and reported to the office on August 1, as well as August 2. A LPL human resources representative emailed Argush that "any further violation of LPL Financial's directive to work remotely will result in immediate termination for cause and we are prepared to have you escorted from the company's premises if necessary."

Argush came into the office the next business day, August 5. He was again instructed not to return. Argush went in once more, on August 6, and LPL terminated his employment that day. LPL terminated Argush "for cause," which precluded him from collecting severance pay and stock options.

In December 2013, Gavornik and Mariniello were also terminated for cause, based on "an act or omission which [wa]s injurious to the financial condition or business reputation of LPL." LPL claimed that Gavornik and Mariniello were required under the stock plan agreement to pay amounts owed by the corporate seller of Concord. LPL terminated Gavornik and Mariniello after they failed to repay the amount allegedly due. Argush posits that Gavornik and Mariniello were not personal guarantors of this debt and that LPL's proffered reason was pretextual.

Argush brought suit against LPL in New Jersey Superior Court, seeking lost severance benefits and lost future earnings.[2] LPL removed the action to the federal district court. Thereafter, LPL filed several motions in limine, including motions to preclude Argush from offering evidence of: (1) LPL's "planning and motive" for Argush's termination ("motion in limine no. 1"), and (2) the circumstances surrounding LPL's termination of Argush's business partners, Gavornik and Mariniello ("motion in limine no. 3"). The district court granted these motions during the final pretrial conference, which was primarily conducted in chambers and off the record. Additionally, LPL moved to strike portions of Argush's expert report related to front-pay damages. Argush sought fourteen years' worth of lost future earnings pursuant to his breach of contract claims. The district court ruled that Argush's potential damages were limited by the operative provisions of the agreement and granted LPL's motion to strike.

In sum, the district court handed down an order barring Argush from introducing evidence: (1) of possible motives for termination of his employment, (2) concerning the terminations of Gavornik and Mariniello, and (3) related to previously stricken portions of his expert reports concerning front-pay damages. It so held "[f]or the reasons stated at the Final Pretrial Conference."

Two of Argush's claims against LPL—breach of his employment agreement and breach of his stock option agreement—proceeded to a trial by jury. Argush argued at trial that his misconduct was not willful and that he was justified in ignoring instructions

---

[2] Gavornik and Mariniello were also plaintiffs in this lawsuit.

to work remotely. He contended "that both the work-remotely directive and subsequent termination were pretextual and in retaliation for the filing of the lawsuit" by Argush, Gavornik, and Mariniello. LPL asserted in defense that it fired Argush "after he repeatedly violated his manager's unambiguous directive to work remotely." According to LPL, this conduct constituted "willful misconduct" and, therefore, cause for termination. Following a five-day trial, the jury returned a verdict in favor of LPL. The jury found that "cause" existed for the termination of Argush's employment.

Argush now appeals the district court's pretrial order granting LPL's motion in limine no. 1, motion in limine no. 3, and motion to strike portions of Argush's expert report. He seeks a new trial. LPL responds that the district court properly excluded evidence of LPL's motivation for terminating Argush and his partners because those issues were irrelevant to Argush's breach of contract claims. Moreover, any evidence improperly excluded was harmless error. With regard to LPL's motion to strike portions of Argush's expert testimony, LPL contends that Argush was not entitled to front-pay damages under his written contract and that this issue is moot, nevertheless, because the parties stipulated to the amount of damages, had the jury found LPL liable.

## II.

We review evidentiary rulings for abuse of discretion. *Pfeiffer v. Marion Ctr. Area Sch. Dist.*, 917 F.2d 779, 781–82 (3d Cir. 1990). "An abuse of discretion is a 'clear error of judgment,' and not simply a different result which can arguably be obtained when applying the law to the facts of the case." *United Tel. Workers v. W. Union Corp.*,

6

771 F.2d 699, 703 (3d Cir. 1985) (quoting *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971)).

### III.

Under Federal Rule of Evidence 402, "[i]rrelevant evidence is not admissible." Evidence is considered relevant if: "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Moreover, even if evidence is relevant, a court may exclude the evidence "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

#### A. Motion in Limine No. 1

To successfully bring a claim for breach of contract under New Jersey law, a plaintiff must prove: "(1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). "The law is clear that where the right to terminate a contract is absolute under the wording in an agreement, the motive of a party in terminating such an agreement is irrelevant to the question of whether the termination is effective." *Karl's Sales & Serv., Inc. v. Gimbel Bros., Inc.*, 592 A.2d 647, 651 (N.J. Super. Ct. App. Div. 1991).

Argush's employment agreement provided that he was an at-will employee whose employment could be terminated by LPL at any time, with or without cause. Thus, the

7

only issue presented to the jury was whether LPL's decision to fire Argush for cause—and, consequently, to withhold Argush's severance benefits and cancel his stock options—was permissible under the employment agreement. In other words, the only pertinent question before the jury was whether Argush's conduct prior to his termination constituted "cause" under the agreement. LPL's motive and intent were irrelevant to whether Argush's conduct amounted to "willful misconduct" and, therefore, cause.

Argush relies upon cases in which "cause" was not defined by the employment agreement, unlike the agreement at issue. *See, e.g.*, *Spano v. JP Morgan Chase Bank, N.A.*, No. 2:09–cv–04055, 2011 WL 6934837, at *6 (D.N.J. Dec. 30, 2011). Only where cause is left undefined by the employment agreement is an employer required to demonstrate that the discharge was not "arbitrary." *See id.* Additionally, Argush cites an Illinois opinion in support of his contention that "[c]ourts have held that motive of a party seeking to exercise contractual discretion may be examined in determining whether the exercise of discretion constituted a breach of contract." *See Bartlett Bank & Trust Co. v. McJunkins*, 497 N.E.2d 398 (Ill. App. Ct. 1986). That case is not only non-binding but inapposite. In *Bartlett*, the contract expressly required an inquiry into whether the decision was "reasonable" and made in "good faith" under the Uniform Commercial Code ("UCC"). *Id.* at 406. Here, the agreement does not include a reasonableness requirement, and it is not governed by the UCC.

Even if evidence of LPL's planning and motive in firing Argush had some bearing on Argush's breach of contract claims, any probative value would be substantially outweighed by a risk of confusing the issues and misleading the jury. Fed. R. Evid. 403.

8

As made apparent in case law cited by Argush, presentation of motive evidence signals claims of retaliation, discrimination, or promissory estoppel. It does not help the jury in deciding liability under a breach of contract cause of action. Thus, pursuant to Rules 402 and 403, the district court did not abuse its discretion in granting LPL's motion in limine no. 1.

### B. Motion in Limine No. 3

Evidence surrounding LPL's termination of Gavornik and Mariniello was also irrelevant to Argush's breach of contract claims. *See Heitman v. Kaltenbach & Stephens, Inc.*, 112 A. 306, 306-07 (N.J. 1920). Whether LPL permissibly terminated Gavornik and Mariniello for cause under their respective employment agreements was of no consequence in determining Argush's action. *See* Fed. R. Evid. 401 & 402. As previously stated, in order to prevail on a breach of contract claim against LPL, Argush was required to demonstrate that: (1) he and LPL had a contract; (2) LPL breached that contract; (3) he sustained damages as a result of LPL's breach; and (4) he performed all obligations required of him under the contract. *See Frederico*, 507 F.3d at 203. Thus, LPL's contracts with Gavornik and Mariniello, and its treatment of those individuals, were irrelevant to Argush's claims.

Even if minimally relevant, the risk of substantial undue prejudice supported the district court's decision to exclude evidence of the circumstances surrounding LPL's terminations of Gavornik and Mariniello. *See United States v. Bailey*, 840 F.3d 99, 119 (3d Cir. 2016); *Bhaya v. Westinghouse Elec. Corp.*, 922 F.2d 184, 188 (3d Cir. 1990) ("Evidence that a party committed wrongs other than those at issue in a case often creates

9

a danger of 'unfair prejudice' because such evidence may influence a jury to return a verdict based on a desire to punish for the other wrongs."). Such evidence could have led the jury to believe that it was permitted to return a verdict in favor of Argush due to LPL's breach of other agreements.

Consequently, under Rules 402 and 403, the district court also did not abuse its discretion in granting LPL's motion in limine no. 3, which precluded Argush from presenting evidence of the circumstances surrounding LPL's termination of Gavornik and Mariniello.

### C. Motion To Strike Expert Report on Front-Pay Damages

Finally, Argush appeals the district court's decision to strike portions of his expert report that dealt with loss of future earnings. LPL first contends that this argument raised by Argush on appeal is moot because the parties unconditionally stipulated as to the amount of damages in the event the jury found LPL liable.

Under New Jersey law, a damages stipulation is binding during subsequent proceedings between the parties, absent an express limitation to the contrary. *Walgorf v. Shuta*, 142 F.3d 601, 616 (3d Cir. 1998). Thus, LPL argues, even if Argush succeeds on appeal, this damages stipulation would remain in effect, making moot his appeal of the district court's ruling on the motion to strike. *See Seneca Res. Corp. v. Twp. of Highland, Elk Cty., Pa.*, 863 F.3d 245, 253–56 (3d Cir. 2017). Argush responds that he entered into the damages stipulation after the district court granted LPL's motion to strike Argush's expert testimony on front-pay damages and, therefore, implicitly reserved his right to appeal the issue.

Irrespective of this stipulation, however, Argush would have been ineligible to receive front-pay damages upon the return of a jury verdict in his favor. Argush brought breach of contract claims, and his employment with LPL was at-will. Consequently, under the terms of his employment agreement, Argush would not be entitled to future earnings. *See Donovan v. Bachstadt*, 453 A.2d 160, 165 (N.J. 1982) (stating that "the defendant is not chargeable for loss that he did not have reason to foresee as a probable result of the breach when the contract was made"). Again, Argush relies on inapposite cases that deal with discrimination and promissory estoppel claims in an attempt to rebut this conclusion. Evidence of Argush's lost future earnings was irrelevant to Argush's breach of contract damages under Rule 401 and was, therefore, inadmissible.

## IV.

Accordingly, we will affirm the district court decisions.

11